CARFAGNO, derivatively on behalf
of CENTERLINE HOLDING
COMPANY, Plaintiff,

v.

Marc D. SCHNITZER, Stephen M. Ross, Jeff T. Blau, Leonard W. Cotton, Robert J. Dolan, Nathan Gantcher, Jerome Y. Halperin, Robert L. Loverd, Robert A. Meister, Janice Cook Roberts, and Thomas W. White, Defendants.

and

Centerline Holding Company, Nominal Defendant.

No. 08 Civ. 912(SAS).

United States District Court, S.D. New York.

Dec. 1, 2008.

Beth A. Kaswan, Esq., Scott + Scott, LLP, New York, NY, David R. Scott, Esq., Scott + Scott, LLC(CT), Colchester, CT, Walter W. Noss, Esq., Scott + Scott, LLP, Cleveland Heights, OH, for Plaintiff.

Richard A. Rosen, Esq., Daniel J. Leffell, Esq., Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, for Defendants Schnitzer, Levy, Cotton, Allen, Dolan, Meister, Gantcher, Halperin, Loverd, Roberts and White.

Peter L. Simmons, Esq., Fried, Frank, Harris, Shriver & Jacobson LLP, New York, NY, for Defendants Ross and Blau.

Jennifer F. Beltrami, Esq., Wolfblock, LLP, New York, NY, for Defendant Centerline Company.

## OPINION AND ORDER

SHIRA A. SCHEINDLIN, District Judge.

## I. INTRODUCTION

John Carfagno brings actions derivatively on behalf of Centerline Holding Company ("Centerline" or the "Company") and directly on behalf of the Company's shareholders, alleging that defendants, who are members of the Company's Board of Trustees, entered into a number of transactions with the purpose of "enriching insiders" at the "expense" of public shareholders.[1] Carfagno alleges claims of breach of fiduciary duty, waste of corporate assets, and unjust enrichment.[2] Pursuant to Federal Rule of Civil Procedure 23, Carfagno moves to certify a class of shareholders to pursue only the claims of unjust enrichment.[3] Because I find that Carfagno lacks standing to pursue his claims for unjust enrichment directly, his motion for class certification is denied.

## II. BACKGROUND

### A. Procedural History

On April 28, 2008, Carfagno filed a Consolidated Amended Verified Complaint (the "Complaint") against defendants.[4] The five causes of action, which arise under Delaware law, are: 1) on behalf of the Company in a derivative action, breach of fiduciary duties of loyalty, due care and good faith; 2) on behalf of Carfagno and putative class members, breach of the same fiduciary duties; 3) a derivative claim for corporate waste; 4) unjust enrichment against all of the defendants; and 5) unjust enrichment against defendants Stephen M. Ross and Jeff T. Blau, in particular.[5] On May 12, 2008, all defen-

---

1. *See* Memorandum of Law in Support of Plaintiff's Motion for Class Certification ("Pl. Mem.") at 1.

2. *See* Consolidated Amended Verified Complaint ("Compl.") ¶¶ 82–102.

3. Pl. Mem. at 1.

4. *See* Compl. The Complaint was jointly filed with Tony Broy, another plaintiff in the case. On May 9, 2008, the Court entered an Order for the Voluntary Dismissal of Plaintiff Tony Broy. Thus, this case is now brought only by plaintiff John Carfagno.

5. *See id.* ¶¶ 82–102. The Fourth Cause of Action in the Complaint alleges unjust enrichment by all defendants and seeks repayment of "all monies and property in the hands of Defendants" to Centerline. *Id.* ¶¶ 98, 99. The Fifth Cause of Action alleges unjust enrichment by defendants Ross and Blau and seeks disgorgement of their benefits as payment to plaintiff and the class. *Id.* ¶¶ 100–102. Although the Complaint only seeks disgorgement on behalf of Carfagno and putative class members in the Fifth Cause of Action—indicating that Carfagno intends to pursue this claim as a direct action—Carfagno appears to be seeking class certification for both Causes

dants filed a motion to dismiss.[6] After Carfagno filed his response to defendants' motion to dismiss, the parties entered a stipulation whereby defendants withdrew their motion to dismiss without prejudice.[7] On July 15, 2008, defendants filed their answers to the Complaint.[8] On July 31, 2008, Carfagno filed the instant motion for class certification with respect only to the unjust enrichment claims against all defendants and against Ross and Blau.[9]

## B. Facts [10]

Beginning in March 2007, the management of Centerline began transforming the business profile of the Company from a "pure tax-exempt bond fund to a full service real estate finance and investment company." [11] As part of this transformation and to raise capital to ease liquidity problems, the Company entered into discussions about the prospect of selling convertible preferred stock.[12] Although the Company had begun conversations with Morgan Stanley and Goldman Sachs regarding their interest in purchasing this stock, the Company's Board ultimately approved a sale of the preferred stock to The Related Companies, L.P. ("Related"), Centerline's largest shareholder, and a company owned by Ross and Blau.[13] While Related had initially proposed a more attractive offer than the ones offered by Morgan Stanley and Goldman Sachs, after further negotiations, the terms of the deal with Related ended up being worse than those put forward by the investment banks.[14]

It was not until December 28, 2007 that Centerline announced to the public that, among other surprising news, the defendants "had entered into a related party transaction [with Related], whereby Related would provide Centerline $131 million in financing" in return for 12.2 million shares of convertible preferred stock and an 11% dividend on those shares.[15] Although the Company had planned a private placement of these shares to Related, defendants soon realized that they might not be able to obtain the necessary shareholder approval for the transaction.[16] In

of Action. *See* Pl. Mem. at 2 ("The claims which Plaintiff seeks to pursue on a class-wide basis are limited to those seeking equitable relief for unjust enrichment on a 'disgorgement' theory"). Delaware law directs courts to determine whether an action is properly brought as a derivative or direct action, regardless of how it is labeled by the plaintiff. *See Kramer v. Western Pacific Industries, Inc.*, 546 A.2d 348, 352 (Del.1988) (citing *Lipton v. News Int'l, Plc*, 514 A.2d 1075, 1078 (Del.1986)) ("In determining the nature of the wrong alleged, a court must look to 'the body of the complaint, not to the plaintiff's designation or stated intention.'"). Thus, I will consider whether a class should be certified for either of the two Causes of Action.

6.  *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Consolidated Amended Verified Complaint.

7.  *See* 6/19/08 Stipulation and Order.

8.  *See* 7/15/08 Answers to Complaint.

9.  All defendants note that Carfagno failed to move for class certification with respect to the Second Cause of Action—the alleged breach of fiduciary duty claim on behalf of Carfagno and putative class members. Because the deadline to file motions for class certification has passed, this claim is dismissed.

10.  Because this motion for class certification applies only to Carfagno's unjust enrichment claims, only facts pertinent to these claims are discussed here.

11.  Compl. ¶ 5 (internal quotations omitted).

12.  *See id.* ¶ 56.

13.  *See id.* ¶¶ 9, 56.

14.  *See id.* ¶ 56.

15.  *Id.* ¶ 9.

16.  *See id.* ¶ 16.

order to avoid a shareholder vote but ensure Related's participation, defendants decided to pursue a Rights Offering, the terms of which included that Related would "backstop" the deal, or retain any shares not purchased by shareholders.[17]

Although all shareholders were permitted to participate in the offering, few shareholders actually did because the price of Centerline stock had plummeted since the offering was priced, making the preferred stock less attractive.[18] In this way, Related was able to purchase the stock in a " 'sweetheart deal' to the detriment of Centerline, Plaintiffs, and the other shareholders in the Class." [19]

### C. The Proposed Class

Carfagno moves for class certification of only the claim seeking equitable relief for

unjust enrichment.[20] He seeks to certify a class defined as:

> [H]olders of Centerline's common stock or other Centerline securities (except Defendants herein and any persons, firms, trust, corporation or other entity related to or affiliated with them and their successors in interest) who qualified to purchase Centerline's convertible 11% preferred stock in the Rights Offering ("the Class"), but did not.[21]

### III. APPLICABLE LAW

#### A. Standing

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." [22] Thus, the adjudication of standing must be made prior to determining whether the requirements of class certification have been satisfied.[23] A plaintiff has the burden to show

---

**17.** *See id.*

**18.** *See id.* ¶ 18.

**19.** *Id.* ¶ 19.

**20.** Pl. Mem. at 2.

**21.** *Id.* (quoting Compl. ¶ 37).

**22.** *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). *Accord Ross v. Bank of America, N.A. (USA),* 524 F.3d 217, 222 (2d Cir.2008) (citation omitted).

**23.** *See In re Salomon Smith Barney Mutual Fund Fees Litig.,* 441 F.Supp.2d 579, 607 (S.D.N.Y.2006). Recent Supreme Court decisions, notably *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) and *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999), have suggested that the traditional analysis, of determining standing prior to an investigation of class certification requirements, may not always apply, and that an examination of class certification requirements may be "logically antecedent" to the determination of standing. *In re Salomon Smith Barney,* 441 F.Supp.2d at 605–06. However, courts in this district have noted that *Amchem* and *Ortiz* involved "unique pro-

cedural postures." *In re Salomon Smith Barney,* 441 F.Supp.2d at 606. *See also In re AllianceBernstein Mut. Fund Excessive Fee Litig.,* No. 04 Civ. 4885, 2005 WL 2677753, at *9 (S.D.N.Y. Oct. 19, 2005), *vacated on other grounds,* 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) (noting that the Supreme Court has emphasized that the analysis used in *Amchem* and *Ortiz* should be applied only "when a court is confronted with an extremely complex case defying customary judicial administration"). *Amchem* involved asbestos claims in which the jurisdiction of the court with respect to the settlement of claims by exposure-only plaintiffs (including plaintiffs who were unaware they had been exposed to asbestos) was at issue. *See Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 622 (3d Cir.1996). Because the Third Circuit found that this and other jurisdictional issues would not arise but for class certification, it decided to dispose of the class certification requirements first, and the Supreme Court agreed. *See id.* at 623; *Amchem,* 521 U.S. at 612–13, 117 S.Ct. 2231. *Ortiz* involved similar claims, and the Supreme Court approved of the analysis used in *Amchem. See Ortiz,* 527 U.S. at 831, 119 S.Ct. 2295. Because this case does not present similar complex issues, I will follow the traditional analysis.

that three standing requirements are met. A plaintiff must allege an "injury in fact," there must be causation between defendants' conduct and plaintiff's injury, and plaintiff's injury must be capable of being redressed.[24]

## B. Derivative and Direct Claims Under Delaware Law[25]

Under Delaware law, the proper analysis to determine whether a case is a derivative or direct action is "based solely on the following questions: Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?"[26] Thus, "[n]ormally, claims of corporate overpayment are treated as causing harm solely to the corporation and, thus, are regarded as derivative."[27] In such situations, "the corporation is both the party that suffers the injury (a reduction in its assets or their value) as well as the party to whom the remedy (a restoration of the improperly reduced value) would flow."[28]

However, in *Gentile v. Rossette*, the Delaware Supreme Court defined one breach of fiduciary duty scenario in which a "corporate overpayment claim" may be brought as both a derivative and a direct action:

> (1) a stockholder having majority or effective control causes the corporation to issue 'excessive' shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders.[29]

This fact pattern applies only to "situations where a controlling shareholder exists."[30] This is because the harm sought to be remedied "can only arise when a controlling stockholder, with sufficient power to manipulate the corporate processes, engineers a dilutive transaction whereby that stockholder receives an exclusive benefit of increased equity ownership and voting power for inadequate consideration."[31]

Under Delaware law, a controlling shareholder is one who "(1) owns more than 50% of the voting power of the corporation; or (2) exercises control over the business and affairs of the corporation."[32] "The second test exists to allow the law to impose fiduciary obligations on stockholders who, although lacking a clear majority,

24. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

25. When determining "whether claims should be brought directly or derivatively, courts must look to the law of the [company's] state of incorporation." *See In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2005 WL 2677753, at *3 (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108–09, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991)). Centerline is a Delaware corporation, so Delaware law applies here. *See* Compl. ¶ 25.

26. *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del.2004).

27. *Gentile v. Rossette*, 906 A.2d 91, 99 (Del. 2006).

28. *Id.*

29. *Id.* at 99–100.

30. *Feldman v. Cutaia*, 956 A.2d 644, 657 (Del. Ch.2007), *aff'd*, 951 A.2d 727 (Del.2008).

31. *Id.*

32. *In re PNB Holding Co. S'holders Litig.*, No. Civ. A. 28–N, 2006 WL 2403999, at *9 (Del. Ch. Aug. 18, 2006) (citing *Kahn v. Lynch Commc'n. Sys. Inc.*, 638 A.2d 1110, 1113–14 (Del.1994)).

have such formidable voting and managerial power that they, as a practical matter, are no differently situated than if they had majority voting control." [33]

## IV. DISCUSSION

Defendants argue that Carfagno lacks standing to assert his unjust enrichment claims on behalf of shareholders because these claims can only be brought as derivative claims.[34] Defendants contend that "it was Centerline itself—not its shareholders—that sold the preferred shares and received the purported inadequate consideration in exchange." [35] In addition, defendants assert that because Ross and Blau are not controlling shareholders, Carfagno's claim against them cannot satisfy the first condition set out in *Gentile v. Rossette*.[36] In response, Carfagno argues that the unjust enrichment claims do satisfy the conditions laid out by the Delaware Supreme Court in *Gentile*.[37]

### A. The Fifth Cause of Action Against Ross and Blau

█ With respect to the claim against Ross and Blau, Carfagno notes that they, together with their ownership of Related, controlled 13.9% of Centerline prior to the Rights Offering, making them Centerline's largest shareholders.[38] He also asserts that Ross and Blau "dominated Centerline and its Board through their personal and business entanglements with Centerline and its directors." [39] Also, as Centerline's largest shareholders, they were permitted to nominate "a minimum of four non-independent trustees to Centerline's Board." [40] Thus, Carfagno contends, defendants Ross and Blau should be considered "controlling shareholders" of Centerline.[41] Because Related was able to obtain a better price than it should have on the preferred stock and because Ross and Blau were able to increase their ownership stake in the Company while public shareholders saw a corresponding decrease in their stakes, Carfagno argues that his unjust enrichment claim satisfies the conditions of *Gentile*. I disagree.

As an initial matter, prior to the Rights Offering, Ross and Blau owned only 13.9% of Centerline's stock, much less than the 50% ownership that the Delaware Supreme Court has held is sufficient in order to be considered a "controlling shareholder." [42] Also, defendants Ross and Blau did not possess "control over the business and affairs of the corporation." [43] Ross is the Non–Executive Chairman of the Board of Centerline, and founder, Chairman, CEO and Managing General Partner of Related.[44] Blau is the President of Related.[45] Besides their participation on the Board of Trustees of the Company, there is no evidence that they were involved in the day-

---

33. *Id.*

34. *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification ("Def. Mem.") at 3–4.

35. *Id.* at 4.

36. *Id.* at 6–7.

37. Reply in Further Support of Plaintiff's Motion for Class Certification ("Pl. Rep.") at 2.

38. *See id.*

39. *Id.*

40. *Id.*

41. *See id.* at 3.

42. *See In re PNB Holding,* 2006 WL 2403999, at *9 (citing *Kahn,* 638 A.2d at 1113–14).

43. *Id.*

44. *See* Compl. ¶ 27.

45. *See id.* ¶ 28.

to-day management of the Company.[46]

In addition, the only independent trustee with which Ross and Blau may have had "personal or business entanglements" is defendant Dolan.[47] In September 2004, Ross made a large donation to the University of Michigan Business School, of which Dolan is the Dean.[48] Thus, at most, Carfagno has shown that one defendant trustee may have felt some indebtedness towards Ross.

Finally, while Ross and Blau are able to nominate four of the eleven trustees to Centerline's Board, this does not give them majority control of the Board. Moreover, Delaware courts have held that the power to nominate, by itself, does not translate into control of a director.[49] I conclude, therefore, that Ross and Blau were not "controlling shareholders" of Centerline.

My conclusion is buttressed by the fact that all of Centerline's shareholders were given the opportunity to participate in the Rights Offering.[50] Thus, defendants Ross and Blau cannot be said to have "manipulate[d] the corporate processes" in order to "engineer[ ] a dilutive transaction whereby [they] receive[d] an exclusive benefit." [51] It is unfortunate that the drop in Centerline's share price made the offering unattractive to public shareholders such that only a small number of shares were purchased by them while Related was able to retain the rest. However, this outcome, while foreseeable, was not the product of Ross and Blau's alleged manipulation of the Company's Board of Trustees. The terms of the offering included that Related would retain any shares not purchased by other shareholders, and shareholders were aware of this.

While it is true that the sale of convertible preferred stock to Related wrongfully diluted Carfagno's and other public shareholders' ownership in the Company, such claim should properly be brought as a derivative action rather than as a direct action.[52] Because Carfagno does not have

---

**46.** Indeed, the Complaint alleges that defendant Schnitzer, Centerline's President and CEO, spearheaded the transformation of the Company. *See id.* ¶¶ 45–56. He was assisted by members of his management team and defendant Cotton. *See id.* ¶¶ 46, 51, 52.

**47.** Pl. Rep. at 3.

**48.** *See id. See also* Compl. ¶ 78. The Complaint also alleges that defendant Halperin holds "close alliances with and allegiances to [ ] Ross and Blau and is dependent upon them for continuation of his positions on the boards of Centerline and Equinox Holdings Inc. (an affiliate of The Related Companies)." Compl. ¶ 79. Even if I was to credit this allegation and find that two other trustees were controlled by Ross and Blau, it would not change my conclusion that Ross and Blau were not controlling shareholders.

**49.** *See, e.g., Williamson v. Cox Commc'ns., Inc.,* No. Civ.A. 1663–N, 2006 WL 1586375, *4 (Del.Ch. June 6, 2006) (ruling that the nomination of directors "does not, without more, establish actual domination or con-

trol"); *Odyssey Partners, L.P. v. Fleming Cos.,* 735 A.2d 386, 408 (Del.Ch.1999) (holding that a director's nomination by a shareholder does not amount to the shareholder's control over the director).

**50.** *See* Compl. ¶ 62.

**51.** *See Feldman,* 956 A.2d at 658 (holding that defendant directors had not "exclusively [benefitted]" from the transaction because other shareholders were allowed to participate in the private placement).

**52.** As the Delaware Chancery Court has held:

Mere claims of dilution, without more, cannot convert a claim traditionally understood as derivative into a direct one. Clearly, a corporation is free to enter into ... numerous transactions, all of which may result legitimately in the dilution [of present equity holders]. Such a dilution is a natural and necessary consequence of investing in a corporation .... The only cognizable injuries, if any, would be a failure to act in the

standing to pursue his unjust enrichment claim against Ross and Blau as a direct action, class certification must be denied.

### B. The Fourth Cause of Action Against All Defendants

■ Carfagno styles his Fourth Cause of Action as a derivative claim, and I agree with this designation for the same reasons that 1 conclude that his Fifth Cause of Action was derivative in nature. According to Centerline's 2007 Proxy Statement, the combined shareholdings of "All Executive Officers and Trustees of the Company" was 17.6%. Thus, the ownership of only the Company's Board of Trustees was less than 17.6%, well short of the 50% ownership required to be considered a "controlling shareholder" under Delaware law.[53] In addition, Carfagno has not shown that the defendants received an "exclusive benefit" from the Rights Offering. Thus, this claim likewise does not fit the scenario contemplated in *Gentile*. Because this claim belongs to Centerline and not to Carfagno individually, his motion for class certification with respect to his Fourth Cause of Action is also denied.

## V. CONCLUSION

For the reasons stated above, Carfagno's motion for class certification is denied. The Clerk of the Court is directed to close this motion (document no. 44). A confer-

ence is scheduled for December 16, 2008, at 4:30 p.m.

SO ORDERED.

---

best interest of [the corporation] .... These alleged harms [are] inflicted on the corporation itself and [can] be asserted only by or on behalf of the corporation.
*Oliver v. Boston Univ.*, No. Civ.A. 16570–NC, 2006 WL 1064169, at \*17 (Del.Ch. Apr. 14, 2006).

**53.** I aggregate the shareholdings of the directors to illustrate that even the total of the

directors' shareholdings is not sufficient to amount to majority ownership. However, it should be noted that Delaware courts have rejected the suggestion that the control test can be satisfied by aggregating the shareholdings of directors absent a voting agreement among the directors. *See, e.g., In re PNB Holding*, 2006 WL 2403999, at \*10; *Feldman*, 956 A.2d at 657.