Filed 10/21/14  Beach v. Briganti CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARK ALAN BEACH,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CARL BRIGANTI,<br><br>Defendant and Respondent. | B252049<br><br>(Los Angeles County<br>Super. Ct. No. BC501235)<br><br>**ORDER MODIFYING OPINION<br>(CHANGE IN JUDGMENT)** |

THE COURT:

IT IS ORDRED that the opinion filed herein on October 14, 2013, be modified as follows:

1. On page 20, in the last sentence of the Disposition, the word "respondent" shall be changed to "appellant."  As modified, the sentence shall read:

   The appellant shall recover his costs on appeal.

The foregoing does reflect a change in the judgment.

_____
PERLUSS, P. J.                    ZELON, J.                    SEGAL, J. [*]

_____

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 10/14/14  Beach v. Briganti CA2/7 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARK ALAN BEACH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CARL BRIGANTI,<br><br>    Defendant and Respondent. | B252049<br><br>(Los Angeles County<br>Super. Ct. No. BC501235) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge.  Reversed.

Baird, Williams & Greer and Daniel B. Mestaz for Plaintiff and Appellant.

James Lee Reynolds and Ronald P. Kaplan for Defendant and Respondent.

_____

After being terminated from Collections Solutions Software (CSS), plaintiff Mark Beach filed a claim for breach of fiduciary duty alleging that CSS's president, Carl Briganti, had improperly diverted corporate income to himself, thereby reducing Beach's employment compensation. Briganti demurred, asserting that: (1) he was not a majority shareholder and therefore did not owe Beach a fiduciary duty; and (2) Beach was required to bring his claim as a derivative action on behalf of CSS. The trial court sustained the demurrer without leave to amend and entered judgment in favor of Briganti. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Summary of Events Preceding Beach's Lawsuit*[1]

Mark Beach, Carl Briganti and Jay Ford founded Collection Solutions Software, Inc. (CSS), which developed and licensed "collection software to credit industry clients." In 2004, Beach entered into a written employment agreement with CSS stating that he was to be paid "5% of [CSS's] gross profits, calculated and paid monthly." In addition, Beach was to receive 10% of CSS's corporate stock and "stockholder compensation" in the form of dividend payments. The agreement provided that upon termination for any reason, Beach would have the option of requiring CSS to immediately repurchase his shares. The value of the shares was to be calculated based on the following formula: 10% of CSS's gross sales during the prior 12-month period, multiplied by 1.5.

In December of 2012, CSS, acting at the direction of Briganti, terminated Beach. Immediately after his termination, Beach informed CSS he was exercising his right to have the company re-purchase his stock. CSS later submitted a proposed buyout payment plan that "did not comply with the [employment agreement] because, *inter alia*, it proposed payments over a ten year period rather than the two year period required by the [employment] agreement." The buyout plan also failed to include

---

[1]    Our factual summary is based on allegations in the first amended complaint, which we accept as true on appeal from a judgment of dismissal following an order sustaining a demurrer. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)

2

"the . . . financial . . . information necessary to determine the [appropriate] purchase price."

## B. Summary of Beach's Complaint

Following his termination, Beach filed a complaint asserting breach of contract against CSS and breach of fiduciary duty against Briganti, who was CSS's president and treasurer. The operative first amended complaint[2] alleged that Briganti owned "at least thirty-five percent of the total outstanding shares of CSS," which made him the largest individual shareholder.[3] Briganti used his "equity interest" and "position" as president to "control[] the corporate activities of CSS, including its operations, finances and administration." Briganti "maintained his grip on power in many ways," including (among other things): "disregarding . . . corporate formalities"; "usurping the duties of [other CSS officers]"; "maintain[ing] exclusive control over CSS's financial data"; retaining "sole-signatory [authority] on any CSS bank accounts"; and exercising unilateral control over "corporate records" and documents.

The complaint further alleged Briganti had abused his "control over CSS to divert CSS income to himself." To accomplish this "self enrichment" scheme, Briganti had directed CSS to transfer a portion of the payments it received from clients to a technical support company named "NSI." Briganti, who was NSI's owner and "alter ego," "would later determine, unilaterally, what portion of those monies should be returned to CSS as CSS income, what portion would stay in the NSI account as payment for purported NSI services . . . and what portion . . . would [be] transfer[red] to himself . . . ." The

---

[2] Beach filed his original complaint on February 15, 2013. CSS and Briganti each filed a demurrer to the complaint, which the trial court sustained with leave to amend. Beach thereafter filed a first amended complaint, which is the operative pleading.

[3] The complaint further alleged that Jay Ford might also own 35% of CSS, but asserted that no individual owned more stock than Briganti. The complaint further alleged, on information and belief, that Briganti "may own more than fifty percent of CSS's total outstanding shares." For the purpose of this appeal, however, Beach has conceded he cannot prove Briganti owned a majority of CSS.

3

complaint further alleged that when CSS entered into a client agreement that provided for "hosting services," Briganti would "unilaterally. . . . determine" whether to contract out those "hosting services" to NSI "even though CSS was perfectly capable of providing the hosting services itself." Briganti also used CSS funds to lease office space for NSI, print NSI marketing materials and pay NSI employees. In addition to his dealings with NSI, Briganti entered into "self dealing loan agreements between himself and CSS, which . . . [were] kept off the books" and "contained terms that were not fair and reasonable to CSS."

According to the complaint, Briganti's conduct had "artificially impacted CSS's profit and sales numbers, which . . . harmed Beach in numerous ways. First, because Beach's employment income was tied to company profits and stockholder compensation, Beach was paid less than he was entitled to under [his employment agreement]. Indeed, the diversion of CSS monies to Briganti both artificially depressed company profits while secretly inflating Briganti's stockholder compensation. Second, Briganti, by diverting CSS income to himself, enriched his own equity interest in CSS to the detriment of Beach's equity interest. That income diversion reduced the amount of profits that CSS had to share with Beach, so that Briganti received in effect, discriminatory dividends that Beach, as a minority shareholder who did not control CSS finances, did not receive. Third, [because] Beach's minority shares [we]re to be repurchased based on a valuation tied to CSS's gross annual sales [i.e. sales numbers skewed by the controlling and self-serving shareholder] the value of those minority shares ha[d] been artificially depreciated."

In describing his individual causes of action, Beach alleged CSS had breached his employment agreement by "failing to pay [him] the employment compensation to which he was entitled"; "artificially depreciating the repurchase price of [his] stock in CSS"; and "failing to provide Beach with a [stock repurchase] payment plan that conformed to the terms of the [employment agreement]." Beach separately alleged Briganti had violated his fiduciary duties by failing "to control CSS in a fair, just, and equitable manner, and exercise[ing] his power to control corporate activities and finances to benefit

4

himself to the detriment of Beach.  Among other things, Briganti's self enrichment with company profits reduced, by equal measure, the profits in which Beach otherwise would have shared. . ."

### C.  *Briganti's Demurrer to the First Amended Complaint*

Briganti filed a demurrer arguing there were two reasons Beach could not proceed with his breach of fiduciary duty claim.  First, Briganti argued that the allegations in the complaint demonstrated he was not a fiduciary because he owned only 35% of CSS's stock.  Briganti asserted that although "majority shareholders" owe a fiduciary duty to other shareholders, non-majority shareholders do not.[4]  Second, Briganti argued that because Beach was, in effect, attempting to recover corporate assets, he was required to bring his claim as a derivative action and comply with the procedural requirements set forth in Corporations Code section 800.

Beach, however, argued that California law imposes a fiduciary duty on all "controlling" shareholders, which includes both "majority shareholders" and non-majority shareholders who exercise control over corporate activities.  Beach asserted his complaint "adequately pled" Briganti exercised controlling influence over CSS, thereby qualifying him as a fiduciary.  Beach also argued he was not required to bring his claim as a derivative action because he was not seeking to recover on behalf of the corporation;

---

[4]  This argument was based on comments the trial court made at the hearing on Briganti's demurrer to Beach's original complaint, which the court sustained with leave to amend.  In his original demurrer, Briganti argued that Beach was required to bring his breach of fiduciary claim as a derivative action.  At the demurrer hearing, however, the trial court raised the issue of majority ownership, noting that the allegations in the original complaint suggested Briganti owned less than half the company.  The court commented that that if Briganti was "not a majority shareholder," Beach had the ability to "muster together the other shareholders and vote him out."  The court then sustained the demurrer, explaining that if Beach wanted to pursue his fiduciary claim he was required "to amend [the] complaint . . . as to who owns what percentage of what shares."  Beach's first amended complaint, however, alleged only that Briganti owned "at least thirty-five percent" of CSS.  In his demurrer to the first amended complaint Briganti argued that Beach had still failed to comply with the court's directions.

5

rather, he was seeking compensation for individualized injuries he had personally suffered. Specifically, Beach asserted Briganti's alleged misconduct–diverting corporate profits to himself–had deprived Beach of monthly income and stock compensation he would have otherwise received pursuant to the terms of his employment agreement.

At the demurrer hearing, the court stated that it was sustaining the demurrer without leave to amend "per the points raised in the Briganti demurrer." The court subsequently entered an order sustaining Briganti's demurrer without leave to amend and a judgment of dismissal.[5]

---

[5] At the demurrer hearing, the court stated it was sustaining Briganti's demurrer "without leave to amend at this time, but without prejudice to a later motion for leave to amend, if and when plaintiff believes he has the facts necessary to proceed against Mr. Briganti." The court explained that its ruling was intended to allow Beach to investigate whether Briganti was in fact a majority shareholder and, if so, to amend his complaint accordingly. The court's order of dismissal contained language consistent with these statements: "The Court, having sustained without leave to amend the demurrer of defendant Carl Briganti to plaintiff Mark Beach's second cause of action of the . . . first amended complaint at this time but with permission to re-add him as a defendant if further facts are developed, and there being no other causes of action to be adjudicated between defendant Carl Briganti and Plaintiff Mark Beach, it is hereby ordered that the revised first amended complaint against Car Briganti is dismissed." After Beach filed an appeal from this order, we issued a letter advising him that the court's order was not an appealable final judgment. Beach thereafter returned to the trial court, advised it that he had obtained no evidence that would support an amendment of his complaint and requested entry of a judgment of dismissal. In response, the court entered a judgment of dismissal clarifying that it would not entertain any further "motion[s] for leave to amend." On August 15, 2014, we granted Beach's request to augment the appellate record to include the judgment of dismissal, which leaves no issues to be determined between Beach and Briganti and therefore qualifies as an appealable order. (See *Buckaloo v. Johnson* (1975) 14 Cal.3d 815, 821, fn. 3 [judgment that leaves no issues to be determined between plaintiff and a demurring defendant is appealable "notwithstanding that the matter is still pending as to [other defendants]"] [disapproved of on other grounds in *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393, fn. 5]; *Hazel v. Hewlett* (1988) 201 Cal.App.3d 1458, 1463, fn. 3.)

6

## DISCUSSION

### A. *Standard of Review*

"A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. [Citations.] We liberally construe the pleading with a view to substantial justice between the parties. [Citation.]" (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 557-558.)[6]

### B. *The Complaint Adequately Alleges that Briganti Owed a Fiduciary Duty Based on his Status as a Controlling Shareholder*

Beach argues the trial court erred in concluding that non-majority shareholders who exercise control over corporate activities do not owe a fiduciary duty to other shareholders. Beach further contends his first amended complaint adequately alleges Briganti exerted "working control" over CSS, thereby triggering fiduciary obligations. Briganti, however, argues the trial court correctly found that only "majority shareholders, either singly or acting in concert to accomplish a joint purpose, have a fiduciary responsibility to the minority shareholders and to the corporation." Briganti further contends that even if non-majority "controlling" shareholders do qualify as fiduciaries, "the trial court's ruling . . . must [nonetheless] be affirmed . . . because [the complaint] allege[s] facts that show . . . Briganti did not, and could not have, controlled CSS."

---

**6** Generally, when a demurrer "is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) In this case, however, Beach has argued only that his first amended complaint properly states a claim for breach of fiduciary duty against Briganti; he has offered no possible amendment. Accordingly, the only issue in this appeal is whether the current version of the operative complaint adequately states a claim against Briganti.

We must therefore address two issues related to Briganti's status as an alleged fiduciary. First, we must decide whether a minority shareholder who nonetheless exercises control over corporate activities may qualify as a fiduciary. Second, if such a shareholder may qualify as a fiduciary, we must determine whether the allegations in the complaint demonstrate as a matter of law that Briganti did not control CSS.

> 1. *A shareholder who controls corporate activities owes a fiduciary duty to the corporation and its shareholders*

In *Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93 (*Jones*), the California Supreme Court addressed whether majority shareholders owe a fiduciary duty to the corporation and its minority shareholders. The plaintiff, a minority shareholder, alleged that the majority shareholders had breached their fiduciary obligations by engaging in a scheme to inflate the value of their shares, while devaluing the shares of the minority shareholders. The defendants asserted plaintiff's claim failed because "shareholders . . . owe no fiduciary obligation to other shareholders." (*Id.* at p. 108.)

The Supreme Court rejected this argument, concluding that "dominant or controlling shareholders" have a "fiduciary responsibility to [other shareholders] and to the corporation to use their ability to control the corporation in a fair, just, and equitable manner. Majority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority. Any use to which they put the corporation or their power to control the corporation must benefit all shareholders proportionately and must not conflict with the proper conduct of the corporation's business." (*Jones, supra*, 1 Cal.3d at p. 108.) The Court further explained that "[t]he rule applies alike to officers, directors, and controlling shareholders in the exercise of powers that are theirs by virtue of their position and to transactions wherein controlling shareholders seek to gain an advantage in the sale or transfer or use of their controlling block of shares." (*Id.* at p. 110; see also *Bancroft-Whitney Co. v. Glen* (1966)

8

64 Cal.2d 327, 345 (*Bancroft-Whitney*) ["'Corporate officers and directors . . . stand in a fiduciary relation to the corporation and its stockholders.'"].)[7]

Although *Jones* does not specifically address whether these rules extend to non-majority shareholders who exercise control over corporate activities, the decision contains language suggesting that they do. The opinion repeatedly states that all "dominant or controlling shareholders" owe a fiduciary duty to other shareholders, noting that the law demands "equitable treatment of all shareholders by those exercising control over a corporation." (*Jones, supra*, 1 Cal.3d at p. 109.) The decision further explains that the "'the power to control, or rather its use, should be considered in no lesser light than that of a trustee to deal with the trust estate and with the beneficiary.'" (*Id*. at p. 111.) These statements imply the Court intended fiduciary obligations to extend to any person (or entity) who "controls" the business affairs of the corporation.

At least one subsequent California decision has explicitly held that "controlling" shareholders owe a fiduciary duty to other shareholders regardless of whether they own a majority of the corporation. In *Tien Le v. Lieu Pham* (2010) 180 Cal.App.4th 1201 (*Tien Le*), the plaintiff and defendants each owned 50% of a pharmacy corporation. The corporate bylaws provided each owner a right of first refusal regarding the other owner's sale of any portion of the company. After the defendants notified plaintiff they intended to sell their interest in the corporation, plaintiff offered to purchase their shares for $70,000. The defendants refused plaintiff's offer and elected to sell their interest to a third party for approximately $25,000. The third-party purchaser thereafter neglected to file a "change of ownership" notice with the California Board of Pharmacy, which triggered a three month closure of the business. Plaintiff thereafter filed a complaint

---

[7] Although *Jones* and *Bancroft-Whitney* make clear that these fiduciary obligations extend to "corporate officers" (see *Jones, supra*, 1 Cal.3d at p. 110; *Bancroft-Whitney, supra,* 64 Cal.2d at p. 345; *GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc*. (2000) 83 Cal.App.4th 409 [summarizing fiduciary duties of corporate officers], [disapproved of on other grounds in *Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1153-1154].) Beach has not argued that Briganti owed a fiduciary duty as the result of his position at CSS (president and treasurer). Instead, Beach argues only that Briganti owed a fiduciary duty based on his status as a "controlling shareholder."

9

alleging in part that defendants had breached their fiduciary duties by violating the right of first refusal set forth in the corporate bylaws.

The court concluded that although the defendants did not own a majority of the company, they nonetheless owed a fiduciary obligation to plaintiff based on their "control" over the pharmacy corporation. The court explained that under California "corporate common law," shareholders who "exercise . . . control 'over the business affairs of the corporation'" or have the power to "affect the actual conduct of the corporation" owe a fiduciary duty to other shareholders. (*Tien Le, supra,* 180 Cal.App.4th at p. 1211.) The court further explained that California's "Pharmacy Law" imposes special restrictions on the sale or transfer of shares of pharmacy corporations and that violation of these restrictions may result in the suspension or closure of the business. The court held that "given the highly regulated nature of [pharmacy corporations]," the defendants' act of selling shares qualified as a "de facto exercise of control over the corporation's business affairs." (*Ibid*.) The court reasoned that although shareholder fiduciary claims are typically brought against "majority" shareholders, "in this case, . . . it [wa]s not the *quantum* of shares owned by the [defendants] that [provided them control], . . . but the fact that, by circumventing the bylaws, the [defendants] could adversely affect . . . the 'proper conduct of the corporation's interest.' [¶] . . . This is a case where the very attempt to transfer shares of stock itself precipitated the regulatory closure of the corporation's business because that business was a pharmacy business. Hence, it is clear that a fiduciary duty was violated by that attempted transfer." (*Ibid*.)[8]

---

[8]     Briganti contends *Tien Le* has no relevance here because the court limited its holding to "pharmacy corporations." (*Tien Le, supra,* 180 Cal.App.4th at p. 1211.) There is, however, no language in *Le* suggesting the court believed "controlling" shareholders of pharmacy corporations owed a fiduciary obligation to other shareholders, while controlling shareholders of other forms of corporations did not. Instead, the court clarified that while the act of "attempting to sell shares" would not necessarily qualify as a form of "exert[ing] control" over other types of corporations, such conduct did qualify as a form of control "in the case of pharmacy corporations" given the extensive legal restrictions governing the transfers of shares of such corporations. (*Ibid.*)

10

Other California decisions have endorsed the view that non-majority shareholders who exert control over corporate activities qualify as fiduciaries. For example, in *Small v. Fritz* (2003) 30 Cal.4th 167, shareholders brought a derivative action for negligent misrepresentation against "Fritz Companies" and its president and chairman Lynn Fritz, who owned 39% of the corporation. Plaintiffs alleged the defendants had issued a fraudulent quarterly financial report that caused them to retain their shares in the corporation. In assessing whether Lynn Fritz could be held liable for inducing shareholders to hold (rather than purchase or sell) their shares, the California Supreme Court noted that Fritz owed a fiduciary duty to the shareholders both through his status as a "director" and through his status as a "controlling shareholder." (*Id*. at p. 179.) Given that Fritz owned less than a majority of the corporation, the Court's statement suggests the phrase "controlling shareholder" extends to both majority shareholders and shareholders who control corporate activities.

In *Heckmann v. Ahmanson* (1985) 168 Cal.App.3d 119 (*Heckmann*), plaintiffs filed a motion for preliminary injunction asserting that a shareholder group who controlled 12% of the corporation was liable for breach of fiduciary duty under a number of theories, including: (1) aiding and abetting the corporate directors in breaching their fiduciary duties (*id*. at pp. 127-128); (2) "breach[ing] its fiduciary duty as a plaintiff in [a] stockholders' derivative action" (*id*. at p. 133); and (3) "violat[ing] the fiduciary duty owed by controlling shareholders to the other shareholders." (*Id*. at p. 133, fn. 7.) The court affirmed the grant of a preliminary injunction under each of the first two theories. In discussing plaintiffs' "controlling shareholder" theory of liability, the court noted that "[t]he record [wa]s inadequate . . . on the question whether the [defendant] was a controlling shareholder. . . . Although [the defendant] never owned more than about 12 percent of the outstanding [corporate] stock this is not determinative of control. The question, a factual one, is what amount of influence it could exert on the corporation . . ." (*Ibid*.) Again, the court's comments demonstrate that a non-majority shareholder who nonetheless exerts sufficient influence to control corporate activities owes a fiduciary duty to other shareholders.

11

Courts in other jurisdictions have consistently concluded that shareholders who control corporate activities owe a fiduciary duty to other shareholders. In the state of Delaware, which has extensive experience "with litigation involving corporate fiduciary duties" (*Tien Le, supra,* 180 Cal.App.4th at p. 1211), "[i]t is well settled law that . . . a 'controlling stockholder' owes fiduciary duties to other stockholders. A stockholder can meet this 'control' test in one of two ways. First, ownership of more than 50% of the voting power of a corporation satisfies the 'control' test. Alternatively, a stockholder stands as a fiduciary if it 'exercises control over the business and affairs of the corporation.'" (*In re Primedia Inc. Derivative Litigation* (Del. Ch. 2006) 910 A.2d 248, 257 [footnotes omitted]; see also *Kahn v. Lynch Communication Systems, Inc.* (Del. 1994) 638 A.2d 1110, 1113-1114 ["'a shareholder owes a fiduciary duty . . . if it owns a majority interest in or exercises control over the business affairs of the corporation'"].) The second aspect of this "control" test "exists to allow the law to impose fiduciary obligations on stockholders who, although lacking a clear majority, have such formidable voting and managerial power that they, as a practical matter, are no differently situated than if they had majority voting control.'" (*Carfagno ex rel. Centerline Holding Co. v. Schnitzer* (S.D.N.Y. 2008) 591 F.Supp.2d 630, 634-635 [applying Delaware law].)

Numerous other jurisdictions have likewise held that "[i]f a minority shareholder exercises actual domination and control over the corporation's business affairs, then the minority shareholder is deemed to be a controlling shareholder, and held to a fiduciary standard." (*Kearney v. Jandernoa* (W.D. Mich. 1997) 979 F.Supp. 576, 579; see also *In re N & D Properties, Inc.* (11th Cir. 1986) 799 F.2d 726, 731 ["A fiduciary, under general corporate theory, includes an officer, director, agent, majority shareholder or a minority shareholder exercising actual control over the corporation"]; *Maggiore v. Bradford* (6th Cir. 1962) 310 F.2d 519, 521 ["it is well settled that dominant or controlling shareholders who exercise control over a corporation are fiduciaries"]; *Riebe v. National Loan Investors, L.P.* (N.D. Tex. 1993) 828 F.Supp. 453, 456 ["'[s]hareholders may hold a "dominant position" although owning less than a majority of the shares; it is sufficient if their holdings give them "working control" of the

12

corporation.' [citation.]"] [citing and quoting *Drobbin v. Nicolet Instrument Corp.* (S.D.N.Y. 1986) 631 F.Supp. 860, 899]; *Fry v. Trump* (D. N.J. 1988) 681 F.Supp. 252, 256 [fiduciary relationship exists if there is actual exercise of direction over corporate conduct]; *Foster v. Arata* (Nev. 1958) 325 P.2d 759, 765 ["defendants did not hold a majority of the stock . . ., [but] they were still in such dominant position as to subject them to [fiduciary obligations]"].)[9]

Based on the numerous decisions summarized above, we conclude that California –like many other jurisdictions—follows this well-established rule of "corporate common law." (*Tien Le, supra*, 180 Cal.App.4th at p. 1210.)

### 2. *The complaint adequately alleges that Briganti exercised control over CSS*

Briganti contends that even if a non-majority "controlling" shareholder does owe a fiduciary duty to other shareholders, the allegations in the first amended complaint demonstrate that he did not "control" CSS.

Whether a shareholder exerts sufficient control over a corporation's affairs so as to trigger fiduciary duties to other shareholders is a "factual" question and therefore difficult to resolve on the pleadings. (*Heckmann, supra,* 168 Cal.App.3d at p. 133, fn. 7 [whether a non-majority shareholder exerted control over corporation is a "factual" question]; see

---

[9] Multiple treatises also recognize this rule. Fletcher Cyclopedia of the Law of Corporations, which our Supreme Court has described as a "leading treatise" on corporate law (*Greb v. Diamond Intern. Corp.* (2013) 56 Cal.4th 243, 266, fn. 31), states: "Generally, a shareholder who owns less than fifty percent of a corporation's outstanding stock does not, without more, become a controlling shareholder of that corporation with a fiduciary status, although it is possible for a shareholder to be subject to a fiduciary duty even though not a majority shareholder, provided he or she is the 'controlling' shareholder. There must be some evidence demonstrating control, however . . ." (12B Fletcher, Cyclopedia of the Law of Corporations (2008) § 5811.50.) A leading treatise on California corporate law similarly explains that "a shareholder who has powers of control may be personally liable for acts that amount to a breach of duty to . . . shareholders, or the corporation itself." (1 Ballantine & Sterling, Cal. Corporation Laws (4th ed. 1998) § 24.07[7], p. 2-620; see also *Stuparich v. Harbor Furniture Manufacturing, Inc.* (2000) 83 Cal.App.4th 1268, 1277 [describing Ballantine & Sterling publication as "A leading treatise on California corporation law"].)

also *In re Cysive, Inc. Shareholders Litigation* (Del. Ch. 2003) 836 A.2d 531, 551 [question of control is an "intensely factual" question that is "difficult . . . to resolve on the pleadings]; *Howard v. Everex Systems, Inc*. (9th Cir. 2000) 228 F.3d 1057, 1065 (*Howard*) ["'Whether [the defendant] is a controlling person is an intensely factual question"].) In assessing the issue, the trier of fact must "'scrutiniz[e] . . . the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions.' [Citation.]" (*Howard, supra,* 228 F.3d at p. 1065; see also 17 C.F.R. §§ 230.405; 240.12b-2 ["The term 'control' (including the terms 'controlling,' 'controlled by' and 'under common control with') means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."].) To properly state a breach of fiduciary claim against a "minority shareholder," the plaintiff must allege "domination . . . through actual control of corporation conduct." (*Kahn, supra*, 638 A.2d at p. 1114.)

The first amended complaint alleges that, through his equity interest and position at the corporation, Briganti gained sufficient influence to exert "control [over] the corporate activities of CSS, including its operations, finances and administration." The pleading alleges Briganti was able to dominate corporate conduct by, among other things: maintaining sole and exclusive control over the corporation's financial data, bank accounts and records; unilaterally "enter[ing] into [client] contracts on behalf of the corporation"; "exercis[ing] control over the calculations of CSS profits"; and retaining authority over "hiring and firing employees."

Briganti has not explained why these allegations are insufficient to demonstrate that he exercised control over CSS's corporate activities. Instead, he asserts only that other allegations in the complaint show he "did not—and could not—have the control over CSS . . . that Beach alleges he had." The only allegations Briganti cites in support of his argument are statements in the complaint that describe him as "the president and treasurer of CSS, and . . . Jay Ford [a]s its Chief Executive Officer." According to Briganti, "it is reasonably implied or inferred [from these allegations] that [he] was

14

subordinate to Ford" and therefore "possessed neither the power, the authority nor the ability to . . . 'control' CSS."

Briganti cites no authority in support of his apparent contention that the question of corporate control can, as a matter of law, be determined based solely on an employee's job title. Nor does he cite any authority suggesting that a president is, as a matter of law, necessarily a "subordinate" to the chief executive officer. For the purposes of demurrer, we must accept as true the allegations set forth in the complaint. Here, the complaint alleges that, regardless of his job title, Briganti exerted total control over the CSS's operations, finances and administration; the complaint also describes how he was able to exert such control. Those allegations are sufficient to state a claim for breach of fiduciary duty.

### C. Beach Is not Required to Pursue his Fiduciary Claim as a Derivative Action

Briganti argues that even if Beach has stated a claim for breach of fiduciary duty, the claim must be pursued as a derivative action on behalf of CSS. Beach disagrees, asserting that he is entitled to pursue a direct action on his own behalf because he is not seeking recovery for the corporation, but rather is seeking compensation for individualized injuries that he personally suffered.

In *Sutter v. General Petroleum Corp*. (1946) 28 Cal.2d 525 (*Sutter*), our Supreme Court provided an analytical framework for distinguishing claims that must be asserted in a derivative action and those that may be asserted in an individual action: "Generally, a stockholder may not maintain an action in his own behalf for a wrong done by a third person to the corporation on the theory that such wrong devalued his stock and the stock of the other shareholders, for such an action would authorize multitudinous litigation and ignore the corporate entity. Under proper circumstances a stockholder may bring a representative action or derivative action on behalf of the corporation. [Citation.] But 'If the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, . . . it is an individual action. The action is derivative, i.e., in

15

the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' [Citations.] And a stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for the same wrong." (*Sutter, supra,* 28 Cal.2d. at p. 530.)

In *Jones, supra*, 1 Cal.3d 93, the Court applied these principles in determining whether a minority shareholder of United Savings and Loan Association (the Association) could pursue a breach of fiduciary claim against a group of majority shareholders who had allegedly engaged in a scheme that devalued the value of the minority's shares. According to plaintiff's allegations, the defendants had sought to develop a wider market for their Association shares by incorporating a holding company, United Financial (United), and then exchanging their shares in the Association for shares in United. After the exchange, United owned 85% of the Association's stock. United then created a market for its own stock through public offerings. Although United offered to purchase the remaining 15% of Association shares held by the minority shareholders, the value of the offer was substantially less than the value of an equivalent holding of United shares. Plaintiff claimed the majority shareholders had breached their fiduciary duty by diminishing "the value of her stock" while increasing the value of their own. (*Id.* at p. 107.) The trial court sustained defendants' demurrer, concluding that the claim had to be brought as a derivative action.

The Supreme Court reversed. In its analysis, the Court reiterated the differences between a derivative action, which is subject to the procedural requirements of Corporations Code section 800, and an individual action, which is not: "A shareholder's derivative suit seeks to recover for the benefit of the corporation and its whole body of shareholders when injury is caused to the corporation that may not otherwise be redressed because of failure of the corporation to act . . . . 'The stockholder's individual suit, on the other hand, is a suit to enforce a right against the corporation which the stockholder possesses as an individual.'" (*Jones, supra*, 1 Cal.3d at pp. 106-107.) Applying these

16

rules to the case before it, the court concluded the plaintiff was permitted to pursue an individual action: "It is clear from . . . plaintiff's allegations that she does not seek to recover on behalf of the corporation for injury done to the corporation by defendants. Although she does allege that the value of her stock has been diminished by defendants' actions, she does not contend that the diminished value reflects an injury to the corporation and resultant depreciation in the value of the stock. Thus the gravamen of her cause of action is injury to herself and the other minority stockholders." (*Jones, supra*, 1 Cal.3d at p. 107.)

In *Jara v. Suprema Meats, Inc*. (2004) 121 Cal.App.4th 1238 (*Jara*), the court applied the analysis set forth in *Jones* to a breach of fiduciary duty claim that a minority shareholder had alleged against the corporation's other two shareholders. The plaintiff alleged the defendants had breached their fiduciary obligations by agreeing to pay each other excessive compensation without the plaintiff's approval. After summarizing *Jones* and numerous subsequent decisions that had applied it, the court concluded that a minority shareholder is permitted to bring a direct claim for breach of fiduciary duty based on conduct that "resulted in the majority stockholders retaining a disproportionate share of the corporation's ongoing value." (*Id*. at p. 1258.) The court further explained that the plaintiff's claim fell within this category of permissible individual actions: "The gravamen of [plaintiff's] complaint is that he was deprived of a fair share of the corporation's profits as a result of defendants' generous payment of executive compensation to themselves. . . . The corporation paid bonuses to defendants with the objective of reducing the amount of profit in the corporation that had to be shared with [plaintiff]. These payments gave rise to an injury to [plaintiff], as an individual." (*Ibid*.)

The court recognized that, unlike in *Jones*, where the majority shareholders' conduct "had no effect whatever on the underlying business," the defendants' decision to pay themselves excessive compensation had the "potential of damaging the business." (*Jara, supra,* 121 Cal.App.4th at p. 1258.) The court found, however, that the plaintiff had not claimed the company would have experienced "greater prosperity in growth if [defendants'] salaries had been smaller but rather maintains that the payment of generous

17

executive compensation was a device to distribute a disproportionate share of the profits to the two officer shareholders during a period of business success." (*Ibid.*)

The court also noted that the two primary "policy considerations favoring derivative actions"—avoidance of multiple shareholder actions and "encouraging the intracorporate resolution of disputes"—were inapplicable to the case before it. (*Jara, supra,* 121 Cal.App.4th at p. 1259.) The court explained that plaintiff was the only minority shareholder in the closely-held corporation, thereby negating any chance of "a multiplicity of lawsuits." (*Ibid*.) It further explained that the "objectives" of "intracorporate resolution of disputes and managerial freedom" were inapplicable given that the "the defendants constitute[d] the entire complement of the board of directors and all the corporate officers." (*Ibid*.)

Under the analytical framework set forth in *Sutter, Jones* and *Jara*, we conclude that Beach may pursue his fiduciary claim as a direct action, rather than as a derivative action. As in *Jara*, the gravamen of Beach's complaint is that Briganti diverted a disproportionate amount of CSS's income and profits to himself, primarily through his manipulation of the business relationship between CSS and NSI. Beach further alleges that this conduct harmed him "separate and apart from any injury to the corporation as a whole" (*Villari v. Mozilo* (2012) 208 Cal.App.4th 1470, 1478) because, under his employment agreement, he was entitled to a percentage of CSS's income and profits through his monthly compensation and through his stockholder dividend payments. Thus, as stated by Beach in the complaint, "Briganti's self-enrichment with company profits reduced, by equal measure, the profits in which Beach would have otherwise shared." While it is true the complaint suggests Briganti's wrongful conduct may have also caused injury to the corporation, Beach is not seeking to recover for the benefit of the corporation and its body of shareholders. Rather, he is seeking to recover the amount of additional compensation he would have received under the terms of his employment agreement absent Briganti's breach of his fiduciary duties. (See *Sutter, supra,* 28 Cal.2d at p. 530 ["'If the injury is one to the plaintiff as a stockholder and to him individually,

18

and not to the corporation, as where the action is based on a contract to which he is a party, . . . it is an individual action"].)

Moreover, as in *Jara*, it is apparent that the primary objectives underlying the derivative action requirement—avoiding multiplicity of suits and encouraging intracorporate resolution of disputes—are largely absent here. First, because Beach's claims are predicated on the terms of his individual employment agreement, it is not evident that any other shareholder would be permitted to bring a similar suit. (Compare *Sutter, supra,* 28 Cal.2d at p. 530 ["stockholder may not maintain an action in his own behalf for a wrong done . . . to the corporation on the theory that such wrong devalued his stock and the stock of the other shareholders, for such an action would authorize multitudinous litigation"].) Second, the objective of intracorporate resolution of internal disputes is absent where, as alleged here, the corporation has disregarded its corporate formalities and the defendant has usurped the decision making powers of the board and the other corporate officers. (*Jara, supra*, 121 Cal.App.4th at p. 1259.)

Briganti, however, asserts that Beach must pursue his breach of fiduciary claim as a derivate action because, unlike in *Jones* and *Jara*, the complaint sets forth conduct by Briganti that necessarily "had a substantial effect on the corporation," including: "diverting CSS income to himself"; using CSS income to "benefit NSI, without compensating CSS"; and entering into self-dealing loan agreements that were "not fair and reasonable to CSS." Briganti appears to argue that when a stockholder asserts a breach of fiduciary duty claim predicated on conduct that resulted in injury to the corporation, the claim may only be brought as a derivative action. In *Sutter*, however, our Supreme Court refuted this argument, explaining that the same act of misconduct may give rise to both an individual and derivative suit. (*Sutter, supra*, 28 Cal.2d at p. 530.) "Thus, the mere presence of an injury to the corporation does not necessarily negate the simultaneous presence of an individual injury." (*Pareto v. F.D.I.C.* (9th Cir. 1998) 139 F.3d 696, 699 [interpreting and applying *Sutter* and *Jones*].) Under *Sutter* and *Jones*, the determinative issue is the type of harm that is sought to be remedied. Because Beach seeks to recover amounts he was allegedly due under his employment

agreement—which is separate and distinct from any injury to the value of CSS's stock price—his claims may be pursued as a direct action.

## DISPOSITION

The judgment in favor of Carl Briganti is reversed. The trial court shall vacate its order sustaining Briganti's demurrer to the revised first amended complaint without leave to amend and enter a new order overruling the demurrer. The respondent shall recover his costs on appeal.


ZELON, J.

We concur:


PERLUSS, P. J.


SEGAL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20