[No. G041473. Fourth Dist., Div. Three. Jan. 6, 2010.]

TIEN LE et al., Plaintiffs and Respondents, v.
LIEU PHAM et al., Defendants and Appellants.

**COUNSEL**

Ashton R. Watkins for Defendants and Appellants.

The Amin Law Group, Ismail Amin, Tenny C. Rostomian-Amin and Jeffrey R. Groendal for Plaintiffs and Respondents.

**OPINION**

**SILLS, P. J.**—In this case we hold that where the bylaws of a *pharmacy* corporation provide that one stockholder must give another a right of first refusal on the sale of any stock, it is a breach of fiduciary duty for the selling stockholder to attempt to sell to a third party in violation of the right of first refusal. We thus remand the case back to the trial court to ascertain the proper damages, both to the corporation itself and to the other stockholder, for such a breach.

## I. FACTS AND LITIGATION HISTORY

In 2006, Tien Le and his wife Dieu-Hoa Le owned 50 percent of the corporate shares of Newland Pharmacy, while Lieu Pham owned the other 50

percent. Corporate bylaws obligated the Les to give Pham written notice of any intent to sell or transfer. The bylaws also gave Pham a right of first refusal on any sale based on that notice of intent, but did not specify the amount of time in which she could exercise her right of first refusal. Under the bylaws, the shares could not be transferred to someone other than Pham at a price less than, or on terms more favorable than, that stated on the notice of intent to sell or transfer. If so, the transfer would be null and void.

On or about July 18, 2006, Pham sent a letter to the California State Board of Pharmacy to the effect that she would like to buy out the Les' 50 percent share of the business.

Two days later—on July 20—the Les gave written notice to Pham (by certified mail) of their intent to sell their 50 percent share to Paul and Kimngang Hoang for a total of $70,000, cash at transfer. The letter required a written offer from Pham "within 10 days" of the notice.

Pham responded with a letter dated July 27, which was clear that she wanted to buy the Les' shares. In that letter she said that she wished to "retain control of our corporation in my stewardship and will offer to purchase your shares in the corporation." Pham's letter also said, however, that she would need "30 days to locate appropriate legal counsel" and "within which" she would "exercise my option to purchase your share."

Pham's letter of July 27 was not received by Dieu-Hoa Le until August 2. On that day, after receiving Pham's letter, the Les sold their shares to Paul and Kimngang Hoang. However, the price the Les received was $24,000, considerably less than the $70,000 offered to Pham. Nor was it a cash sale. The Hoangs were allowed to make installment payments on the $24,000.

Paul Hoang showed up for a board meeting on September 1, but Pham refused to recognize him as a legitimate director and shareholder and would not allow him to review the corporation's books and records. Paul Hoang did not file a change of ownership form with the California State Board of Pharmacy, an omission which prompted a "cease and desist" order from the board that closed the pharmacy down for about three months beginning in March 2007. The pharmacy was also on probation until 2008.

The Les and Hoangs sued Pham, contending that the transfer to the Hoangs was valid in accordance with Newland Pharmacy's bylaws, also alleging that, after the transfer, Pham had failed to permit the inspection of books and records as demanded, failed to file appropriate documents with state agencies, and converted revenue from Newland Pharmacy for her own personal use.

Pham countered with her own cross-complaint, on behalf of herself and the corporation,[1] alleging, among other things, breach of fiduciary duty against the Les and fraud against Paul Hoang (based on statements he made that he really was the new owner of 50 percent of the pharmacy's shares).

After a bench trial, Pham prevailed on the Les' and Hoang's complaint, while the Les and Hoang prevailed on Pham's cross-complaint. That is, the court, in its statement of decision, ruled that the Les' attempted transfer of shares to the Hoangs was null and void because it did not comply with the corporate bylaws. It was obvious, after all, that the Les had attempted to sell the shares to the Hoangs for a better price ($24,000 as distinct from $70,000) and on better terms (installments rather than cash) than had been offered Pham in the notice of intent to sell.

As to Pham's (and the corporation's) cross-complaint against the Les for breach of fiduciary duty, the statement of decision concluded that they had "failed to carry their burden of proof." The trial judge wrote: "Generally speaking, at trial, little evidence was adduced in support of the cross-complaint." She also wrote, however, that Pham "did not have an adequate opportunity to exercise her right of first refusal" given that Dieu-Hoa Le had "unilaterally demanded that the written offer be made within 10 days."

As to Pham's fraud claim against Paul Hoang, the court held that Pham hadn't relied on any misrepresentation from Hoang. Pham and the corporation, asserting the court erred in exonerating the Les on her fiduciary duty claim and Hoang on the fraud claim,[2] have brought this appeal.

## II. DISCUSSION

### A. *The Standard of Review*

This is one of those cases where some exposition on the topic of the standard of review is necessary to sort out the case. The obvious starting point is that, since Pham and the corporation are challenging a judgment after a court trial, they initially face the formidable substantial evidence standard of review.

The substantial evidence standard has two components, and both work generally against appellants: First, all *conflicts* in the evidence must be resolved in favor of the prevailing party; second, all *reasonable inferences* from the evidence (all conflicts already having been properly resolved) must

---

[1] Thus both sides had filed dueling shareholder derivative actions against each other.

[2] No issue is raised in this appeal as to any of the other claims in the cross-complaint.

be drawn in favor of the prevailing party. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2009) ¶¶ 8:38, 8:60, pp. 8-18, 8-26.)

We should note, then, that Pham and the corporation are necessarily in the position of saying that the evidence, *despite* all the resolution of conflicts and having all reasonable inferences drawn against them, nevertheless *compels* a judgment in their favor, on the two issues they have raised in this appeal: The Les' fiduciary duty and Paul Hoang's alleged fraud. Not surprisingly, the brief filed on behalf of the Les and Hoang lavishes attention on the substantial evidence rule. The Les and Hoang are most certainly correct that if we find any substantial evidence obviating either (a) any fraud on Hoang's part or (b) the existence of a fiduciary duty, or the subsequent breach of a fiduciary duty if there is one, we must affirm the judgment.

However, if one digs a little deeper—for example, by continuing to read the remainder of the respondent's brief—it turns out that the substantial evidence rule is actually irrelevant in the context of the issue of whether the Les' owed a fiduciary duty as shareholders to Pham, and whether any such duty was breached. There is no conflict as to the facts of ownership of the corporation: 50–50. There is no conflict in the evidence regarding the sale (or, better, attempted sale) of the Les' half of the corporation to the Hoangs. And there is no conflict in the evidence as regards the consequences of that attempted sale, namely a cease and desist order from the California State Board of Pharmacy closing the business for about three months beginning in March 2007.[3]

Thus, the Les' actual argument on the fiduciary duty issue presented in their brief turns out *not* to be a factual one at all (e.g., the Les *don't* say: "there was evidence that we didn't really own any shares at all, or that we offered our shares to Pham at the same price and terms as we offered to the Hoangs"), but a legal one: The Les assert that by virtue of the undisputed fact that they were *50 percent* shareholders in the corporation—that is, were not majority stockholders—they had no fiduciary duties to the corporation or to the other 50 percent shareholder. Of course, when the facts are undisputed and the question on appeal is wholly a legal issue, the proper standard of review is independent review. (E.g., *People v. Superior Court (Decker)* (2007) 41 Cal.4th 1, 7 [58 Cal.Rptr.3d 421, 157 P.3d 1017] [because dismissal of attempted murder charges "was based on undisputed facts," it constituted "a legal conclusion subject to independent review on appeal"].)

---

[3] Pham and the corporation called an inspector from the California State Board of Pharmacy who testified that Hoang did not file a change of ownership form with the board, and that the "applicant"—meaning Hoang—is the one responsible for filing such a change of ownership form.

The trial court's comments in its statement of decision, then, that (1) "at trial, little evidence was adduced in support of the cross-complaint" and (2) Pham and the corporation had "failed to carry their burden of proof," while understandable, miss the mark in analyzing the problem of whether the Les had a fiduciary duty toward Pham as regards the bylaws' right-of-first-refusal provision.

The comments were quite understandable if one thinks about how the trial judge experienced the unfolding of the trial. Precisely because the relevant facts involving the attempted sale were undisputed, most of them were presented in the context of *plaintiffs'* (the Les and Hoang) case-in-chief seeking to validate the sale from the Les to the Hoangs. The trial was 90 percent over, in terms of counting pages in the reporter's transcript, when the Les and Hoang rested their case. That case-in-chief included, for example, calling Pham herself as a hostile witness, and the only witness that Pham and the corporation called after plaintiffs had rested was the state board of pharmacy inspector, who explained why the corporation had had to close down for about three months in 2007. So we can understand that it might not have *seemed* like Pham and the corporation were producing much evidence on their cross-complaint at trial. Most of the relevant (and undisputed) facts bearing on the legal question of whether the Les had a fiduciary duty and, if so, violated it, had been brought out in *plaintiffs'* case-in-chief. But just because the undisputed evidence favoring the cross-complaint also happened to come out on plaintiffs' case-in-chief does not mean it was not available to support the cross-complaint.

B. *The Existence of a Fiduciary Duty on the Part of the Les*

■ We conclude that the Les had a fiduciary duty to Pham not to violate the bylaws in regard to the right of first refusal. Our conclusion flows from two distinct steps:

1. Public Policy

■ First, as a matter of common law, we divine a public policy in favor of the strict enforcement of the corporate bylaws of *pharmacy* corporations restricting transfers of shares in such corporations.

By way of background: The topic of the regulation of the ownership of pharmacy corporations has actually been before the United States Supreme Court twice, the first time in 1928 in *Liggett Co. v. Baldridge* (1928) 278 U.S. 105 [73 L.Ed. 204, 49 S.Ct. 57], which struck down as unconstitutional a state statute requiring that 100 percent of the stock in a corporation operating

a pharmacy had to be owned by pharmacists. The second time was in 1973, in *North Dakota State Pharmacy Bd. v. Snyder's Stores* (1973) 414 U.S. 156 [38 L.Ed.2d 379, 94 S.Ct. 407] (*Snyder's Drug Stores*). *Snyder's Drug Stores* overruled *Liggett*. It held that a state statute, requiring that the majority stock in any corporate operator of a pharmacy be owned by registered pharmacists in good standing, was constitutional. The court noted that the " 'selling of drugs and poisons calls for knowledge in a high degree,' " and therefore it was reasonable for the legislature to conclude that pharmacists themselves would be " 'more likely to observe the business with an intelligent eye than a casual investor who looked only to the standing . . . in the market.' " (*Id.* at pp. 166–167.[4])

In California, pharmacies, including pharmacy corporations, are regulated by the Pharmacy Law, found in Business and Professions Code section 4000 et seq.[5] Pharmacy corporations are specifically regulated by sections 4150 through 4156.

■ The law has a number of remarkable features, including requirements that pharmacy corporations comply with the Moscone-Knox Professional Corporation Act (Corp. Code, § 13400 et seq.). (§ 4150.[6]) All directors of pharmacy corporations must be licensed. (§ 4151.[7]) Shareholders who are licensed pharmacists cannot render professional services to the corporation if they lose their license or during such time as their license is suspended. (§ 4153.[8]) The state board of pharmacy is given power to require that the

---

[4] The court continued: " 'The Constitution does not make it a condition of preventive legislation that it should work a perfect cure.' " (*Snyder's Drug Stores, supra,* 414 U.S. at p. 167.) Groan. Who says the United States Supreme Court is above puns?

[5] All future undesignated statutory references in this opinion will be to the Business and Professions Code.

[6] The statute provides in full: "(a) A pharmacy corporation means a corporation that is authorized to render professional services, as defined in Section 13401 of the Corporations Code, so long as that corporation and its shareholders, officers, directors, and employees rendering professional services who are pharmacists are in compliance with the Moscone-Knox Professional Corporation Act, this article, and all other statutes and regulations now or hereafter enacted or adopted pertaining to the corporation and the conduct of its affairs.

"(b) With respect to a pharmacy corporation, the governmental agency referred to in the Moscone-Knox Professional Corporation Act is the Board of Pharmacy of the State of California." (§ 4150.)

[7] The statute provides in full: "Each shareholder, director, and officer of a pharmacy corporation, except an assistant secretary and an assistant treasurer, shall be a licensed person as defined in Section 13401 of the Corporations Code." (§ 4151.)

[8] The statute provides in full: "The income of a pharmacy corporation attributable to professional services rendered while a shareholder is a disqualified person, as defined in Section 13401 of the Corporations Code, shall not in any manner accrue to the benefit of the shareholder or his or her shares in the pharmacy corporation." (§ 4153.)

*bylaws* of a pharmacy corporation include mandatory buyout provisions in the cases of pharmacists who lose their licenses. (§ 4154.[9])

■ Among the provisions of the Moscone-Knox Professional Corporation Act (Corp. Code, § 13400 et seq.) is one which restricts transfer of shares in a professional corporation only to licensed persons. (Corp. Code, § 13407.[10])

■ The Pharmacy Law also has other provisions restricting the persons to whom stockholders in pharmacy corporations may sell their stock. No more

---

[9] The statute provides in full: "The board may adopt and enforce regulations to carry out the purposes and objectives of this article, including regulations requiring (a) that the bylaws of a pharmacy corporation shall include a provision whereby the capital stock of the corporation owned by a disqualified person, as defined in Section 13401 of the Corporations Code, or a deceased person, shall be sold to the corporation or to the remaining shareholders of the corporation within the time as the regulations may provide, and (b) that a pharmacy corporation shall provide adequate security by insurance or otherwise for claims against it by its patients or clients arising out of the rendering of professional services." (§ 4154.)

[10] The statute provides in full: "Shares in a professional corporation or a foreign professional corporation qualified to render professional services in this state may be transferred only to a licensed person, to a shareholder of the same corporation, to a person licensed to practice the same profession in the jurisdiction or jurisdictions in which the person practices, or to a professional corporation, and any transfer in violation of this restriction shall be void, except as provided herein.

"A professional corporation may purchase its own shares without regard to any restrictions provided by law upon the repurchase of shares, if at least one share remains issued and outstanding.

"If a professional corporation or a foreign professional corporation qualified to render professional services in this state shall fail to acquire all of the shares of a shareholder who is disqualified from rendering professional services in this state or of a deceased shareholder who was, on his or her date of death, licensed to render professional services in this state, or if such a disqualified shareholder or the representative of such a deceased shareholder shall fail to transfer said shares to the corporation, to another shareholder of the corporation, to a person licensed to practice the same profession in the jurisdiction or jurisdictions in which the person practices, or to a licensed person, within 90 days following the date of disqualification, or within six months following the date of death of the shareholder, as the case may be, then the certificate of registration of the corporation may be suspended or revoked by the governmental agency regulating the profession in which the corporation is engaged. In the event of such a suspension or revocation, the corporation shall cease to render professional services in this state.

"Notwithstanding any provision in this part, upon the death or incapacity of a dentist, any individual named in subdivision (a) of Section 1625.3 of the Business and Professions Code may employ licensed dentists and dental assistants and charge for their professional services for a period not to exceed 12 months from the date of death or incapacity of the dentist. The employment of licensed dentists and dental assistants shall not be deemed the practice of dentistry within the meaning of Section 1625 of the Business and Professions Code, provided that all of the requirements of Section 1625.4 of the Business and Professions Code are met. If an individual listed in Section 1625.3 of the Business and Professions Code is employing licensed persons and dental assistants, then the shares of a deceased or incapacitated dentist shall be transferred as provided in this section no later than 12 months from the date of death or incapacity of the dentist." (Corp. Code, § 13407.)

than 10 percent of a corporate pharmacy can be owned by doctors or other persons authorized to write prescriptions. (§ 4111, subd. (a)(3).[11])

■ Accordingly, regulations promulgated by the board of pharmacy require all changes of ownership must be reported to the board within 30 days. (Cal. Code Regs., tit. 16, § 1709, subd. (a) ["Any changes in the pharmacist-in-charge, or the owners, or corporate officers shall be reported to the Board within 30 days."].) Further, the board has the power to require a pharmacy to furnish evidence that its "owners or officers are knowledgeable in the laws pertaining to pharmacy." (Cal. Code Regs., tit. 16, § 1774, subd. (a)(6).) Indeed, it was the need for the reporting of changes of ownership that prompted the board to temporarily close the pharmacy in 2007, because (as the inspector testified), the board took the position that Hoang had a duty to report his acquisition of shares. (An inspector with the California State Board of Pharmacy testified at the trial that the duty of reporting is on the "applicant," i.e., the new owner, Hoang.)

■ Public policy is classically derived from statutes. (See *California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247 [73 Cal.Rptr.3d 825] [public policy behind common law rule of " ' "pay first, litigate later" ' " in tax cases].) The statutes and regulations just mentioned reflect a public policy, à la *Snyder's Drug Stores*, seeking a reasonably snug fit between the ownership of pharmacies and their control by licensed pharmacists.

### 2. Corporate Fiduciary Duty

■ Second, having ascertained a public policy in favor of control of pharmacies by licensed pharmacists, we apply California *corporate* common law involving protection of vulnerable stockholders from other stockholders who have the power, by the choice of to whom shares will be sold, to affect the actual conduct of the corporation. (See generally *Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 108, 111 [81 Cal.Rptr. 592, 460 P.2d 464] (*Ahmanson*) [there must be "adequate protection to minority shareholders and particularly to those in closely held corporations whose disadvantageous and

---

[11] Subdivision (a) of the statute provides in full:

"(a) Except as otherwise provided in subdivision (b), (d), or (e), the board shall not issue or renew a license to conduct a pharmacy to any of the following:

"(1) A person or persons authorized to prescribe or write a prescription, as specified in Section 4040, in the State of California.

"(2) A person or persons with whom a person or persons specified in paragraph (1) shares a community or other financial interest in the permit sought.

"(3) Any corporation that is *controlled by*, or in which 10 percent or more of the stock is owned by a person or persons prohibited from pharmacy ownership by paragraph (1) or (2)." (§ 4111, subd. (a).)

often precarious position renders them particularly vulnerable to the vagaries of the majority"]; *Remillard Brick Co. v. Remillard-Dandini Co.* (1952) 109 Cal.App.2d 405, 418–419 [241 P.2d 66] ["It would be a shocking concept of corporate morality to hold that because the majority directors or stockholders disclose their purpose and interest, they may strip a corporation of its assets to their own financial advantage, and that the minority is without legal redress."]; *DeBaun v. First Western Bank & Trust Co.* (1975) 46 Cal.App.3d 686, 696 [120 Cal.Rptr. 354] ["That duty of good faith and fairness encompasses an obligation of the controlling shareholder in possession of facts" that might " 'awaken suspicion and put a prudent man on his guard' " that a " 'potential buyer of his shares may loot the corporation . . . to conduct a reasonable and adequate investigation' " of this potential buyer].)

To be sure, that common law has involved—as the Les now remind us—fiduciary duties imposed on majority or controlling shareholders. In this case, however, it is not the *quantum* of shares owned by the Les that made Pham as vulnerable as any minority shareholder in a close corporation, but the fact that, by circumventing the bylaws, the Les could adversely affect, as Justice Traynor put it in *Ahmanson*, the "proper conduct of the corporation's business." (*Ahmanson, supra,* 1 Cal.3d at p. 108.)

We must remember: This is a case where *the very attempt to transfer shares of stock* itself precipitated the regulatory closure of the corporation's business because that business was a *pharmacy* business. Hence, it is clear that a fiduciary duty was violated by that attempted transfer, based on the mutual vulnerability in which the stockholders found themselves. By unilaterally—and this was the trial court's word—selling to the Hoangs and effectively excluding Pham from the process, the Les jeopardized the "proper conduct" of the business and unilaterally deprived Pham of an important right given her by the corporate bylaws: the right to control who were her "partners" in a regulated professional corporation.

In this regard we note that the Delaware Supreme Court—a body not unfamiliar with litigation involving corporate fiduciary duties—has said that the exercise of control "over the business affairs of the corporation" establishes a fiduciary duty on the part of a shareholder. (See *Kahn v. Lynch Communication Systems, Inc.* (Del. 1994) 638 A.2d 1110, 1113–1114.) In the case of a pharmacy corporation, even the act of attempting to sell shares is a de facto exercise of control over the corporation's business affairs, given the highly regulated nature of the corporation's business.

### C.  *The Fraud Claim Against Hoang*

What we have said already about the standard of review readily disposes of the appeal as regards would-be buyer Hoang. Nothing Paul Hoang said by

way of claiming to be an owner of the pharmacy was *relied on* by Pham or by the corporation, and there is no argument to the contrary in the appellants' briefs. In fact, from the beginning, the Hoangs' rightful ownership of the shares ostensibly obtained from the Les was disputed.

## III. DISPOSITION

The judgment is affirmed to the extent that it exonerates the Hoangs from any claims by Pham on her cross-complaint. The judgment is reversed to the extent that it holds that the Les did not breach any fiduciary duty to Pham. The cause is remanded for further proceedings to establish the amount of damages sustained by the corporation and Pham as a result of the Les' breach.

In the interests of justice, each side will bear its own costs on appeal.

Rylaarsdam, J., and Ikola, J., concurred.

A petition for a rehearing was denied February 5, 2010.