Filed 7/25/16 Albillo v. Cho CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| OSCAR ALBILLO et al., | B261640 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. NC044391) |
| SAM CHO et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge. Affirmed.

Blumberg Law Corporation, Ave Buchwald, John P. Blumberg for Plaintiffs and Appellants.

Bremer Whyte Brown & O'Meara, Joshua D. Bordin-Wosk; Law Office of Priscilla Slocum and Priscilla Slocum for Defendants and Respondents.

## INTRODUCTION

This is the second appeal arising from injuries sustained by plaintiff and appellant Oscar Albillo when he tripped and fell at the entrance to the Ports O'Call Village in San Pedro in May 2010. Oscar and his wife, Blanca Albillo,[1] sued Ports O'Call Restaurant Corporation (POC) as the purported property owner/operator in 2012. The case proceeded to trial in 2014. At the close of the Albillos' presentation of evidence, the court granted POC's motion for nonsuit, finding that the accident occurred on property that had been subleased by POC to respondents Sam and Sung Cho, the Albillos therefore had to prove that POC (as the landlord) had actual notice of a dangerous condition, and the Albillos failed to present evidence of such notice. The Albillos appealed the grant of nonsuit and we affirmed in a prior unpublished opinion.

The litigation did not end there, however. In 2014, after the trial court had indicated it was inclined to grant POC's motion for nonsuit, the Albillos moved to amend their complaint to substitute the Chos, along with entity Sammyeon, Inc. (Sammyeon), as Doe defendants pursuant to Code of Civil Procedure section 474.[2] The Chos and Sammyeon moved to strike the amendment, arguing that the Albillos had unreasonably delayed in adding them as defendants and that they were prejudiced as a result. The trial court granted the motion as to the Chos, dismissing them from the action, but denied it as to Sammyeon.

On appeal, the parties argue as to when the Albillos knew of facts giving rise to a cause of action against the Chos, and whether the Chos sufficiently demonstrated prejudice caused by the belated amendment. We conclude that the trial court's order dismissing the Chos was supported by substantial evidence. Accordingly, we affirm.

---

[1]We refer to the Albillos individually by their first names for the sake of clarity. No disrespect is intended.

[2]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## FACTUAL AND PROCEDURAL HISTORY

A.     *The Premises*

The underlying facts are discussed in detail in our prior unpublished opinion in this matter, *Albillo v. Ports O'Call Restaurant Corp*. (Sept. 16, 2015, B257293) (nonpub. opn.), of which we take judicial notice.[3]  We summarize those facts herein as relevant to the current appeal.

Oscar's trip-and-fall incident occurred at the entrance to the "Pan Pacific Village" area on the west side of the Ports O'Call Village.  The Ports O'Call Village sits on land leased by the City of Los Angeles (City) to POC in 1976, stretching from the water of San Pedro Harbor on the east side to Nagoya Way on the west.[4]  The 1976 Master Lease defined the "Demised Premises" by enumerated parcels, including those relevant here (parcels 13 and 21A), as depicted on a Harbor Map attached to the lease as Exhibit A (Exhibit A).  Parcel 21A is a narrow strip of land between parcel 13 and Nagoya Way, largely made up of the sidewalk that runs between the street and the entry to the Pan Pacific Village.[5]  The Master Lease stated that parcel 21A was to be "used only for a pedestrian thoroughfare for access to and along the leased premises."

In 1992, POC subleased a portion of the leased property to ABC International, Inc. (ABC).  The sublease described the "Demised Premises" using different parcel numbers and by cross hatching placed onto Exhibit A.  ABC was "solely responsible" under the sublease for maintenance costs for the Demised Premises, including common areas. Common areas were defined as including all leasable and common areas of the Demised Premises, including entries and walkways.

ABC assigned the sublease to 3T Marketing and those parties executed a First Amendment to the sublease in 1994.  The amendment redefined the Demised Premises as

---

[3]We also previously granted the Chos' request for judicial notice of portions of the reporter's transcript from the prior appeal.

[4]Nagoya Way is a public street maintained by the City.

[5]Pan Pacific Village was previously named "Asian Village."  The name was changed in 1995.

including specified parcel numbers and "all common areas of the "Asian Village" as cross-hatched on Exhibit "A" attached hereto, and made part of this sublease." In 1995, 3T Marketing assigned the sublease to the Chos.

B.      *The Complaint and Cross-Complaint*

The Albillos filed their complaint for negligence and loss of consortium in March 2012 against POC and "Does 1-100." They alleged that the defendants were "the owners, operators, lessors, lessees, sub-lessors, sub-lessees, tenants, and others in possession of, controlling, or having an interest in the property" and that POC was "the master lessee, landlord and operator" of the property. In that capacity, they alleged that POC negligently allowed a dangerous "elevation separation" to exist between Nagoya Way and the sidewalk in front of the Pan Pacific Village. They further alleged that as Oscar approached the sidewalk from Nagoya Way on May 8, 2010, he did not perceive the "difference in elevation" and therefore tripped and fell, "striking his head and sustaining injury."

POC filed a cross-complaint against the Chos in July 2012 seeking declaratory relief on theories of implied indemnity, contribution, and contractual indemnity. The cross-complaint alleged that to the extent POC was liable for "any of the claims set forth in the Complaint, said damages will be because of and as a proximate result of the primary and active negligence, breach of contract or warranty, or other wrongful conduct" of the Chos and that POC "would be entitled to total and complete indemnity" from the Chos. The cross-complaint further alleged that POC and the Chos "entered into a written Sublease Agreement dated February 21, 2006,"[6] which required the Chos to "defend and indemnify [POC] with respect to the claims being asserted" by the Albillos, and that the plaintiffs' "alleged injuries and damages were the result of the actions or inaction" of the Chos.

---

[6]This agreement, entitled Consent to Sublease, recites the history of subleases and amendments for the property, sets forth a "sub-sublease" for a portion of the property not relevant here, and confirms the Chos' agreement to the terms of the sublease.

4

The Chos filed an answer to the cross-complaint on September 13, 2012, containing a general denial of the allegations of the cross-complaint along with affirmative defenses.

C.  *Summary Judgment and Dismissal of Cross-Complaint*

POC filed a motion for summary judgment on the complaint in May 2013.  The Chos filed a notice of joinder to POC's motion, arguing that "[a]s the location of Plaintiff's alleged fall occurred on premises not maintained, controlled or leased by Defendant [POC], its subleasee [sic], Defendants, Sam Cho and Sung Cho, equally do not possess a duty to maintain those premises as it related to Plaintiff's claims."[7]  The court denied POC's motion.

POC dismissed its cross-complaint against the Chos on June 14, 2013.  The same day, POC substituted in as counsel the law firm Bremer Whyte Brown O'Meara, which had represented the Chos prior to their dismissal.

D.  *Motions in Limine and Trial*

On the first day set for trial, February 24, 2014, the trial court heard extensive argument on motions in limine filed by the Albillos and POC related to POC's duty of care and any liability by a sublessee.[8]  Counsel for POC, Joshua Bordin-Wosk, stated that POC would contend at trial that the accident occurred at a "depression" in the asphalt of Nagoya Road rather than where the roadway meets the sidewalk—in other words, on land owned by the City and just outside the property covered by the Master Lease to POC (and any subleases thereto).  Bordin-Wosk also noted that POC's leased property, including the concrete sidewalk, had been subleased to the Chos and that the Chos had possessed and maintained that property "for many, many years," and therefore that "plaintiff[s] sued

---

[7]The summary judgment pleadings are not included in the record on appeal, nor are any documents, such as the separate statement of undisputed facts, filed by the Chos in support of their joinder, other than the notice of joinder itself.

[8]The Chos' brief purports to cite to a Respondent's Appendix and appears to quote from several motion in limine briefs, but they did not file any such appendix and did not include any motion in limine papers in the record on appeal.  Thus, our consideration is confined to the hearing transcript on the motions and our prior opinion.

5

the wrong people." In response, the Albillos' counsel, John Blumberg, stated that "there will be evidence that the . . . whole walkway, sidewalk is actually not part of a sublease because it is a parcel for ingress and egress, rather than part of the lease." Blumberg then conceded that the parties could put on evidence at trial "about what the leases were, who leased what," the understanding of the boundary lines, and who had a right to possession.

At the continued hearing on February 27, 2014, POC's counsel asserted that the Albillos had to show POC had actual notice of a dangerous condition because POC had leased the sidewalk area to the Chos.[9] The Albillos' counsel responded that "the way I read the lease" meant that the sidewalk was included in the property leased from the City to POC, but was *not* included in the sublease from POC to the Chos.

The liability phase of the trial began the following day, February 28, 2014. While Oscar had no recollection of his fall, other witnesses testified that he fell at the point where the roadway met the concrete sidewalk.[10] The Albillos also presented expert Danny May, who testified that he surveyed the boundary of the property leased to POC by the City. May determined that the boundary was not where the sidewalk met the roadway, but rather seven inches west from the edge of the sidewalk, placing the boundary in the road surface of Nagoya Way.

Brad Avrit, a civil engineer, also testified as an expert for the Albillos. Avrit personally investigated the site of Oscar's fall and his company took a series of photographs of the site. Avrit offered the opinion that the condition of the property created a significant risk of tripping. Avrit also acknowledged that the photographs he took in 2013 did not "accurately depict" the site at the time of Oscar's fall in 2010

___

[9]Counsel for the Albillos ultimately conceded that if the sublease to the Chos covered the site of the fall, the governing case law required them to show that POC as the landlord had actual (as opposed to constructive) knowledge of the dangerous condition and the right and ability to cure it. (See *Stone v. Center Trust Retail Properties, Inc*. (2008) 163 Cal.App.4th 608.)

[10]The exact location of Oscar's fall was disputed at trial. Taking the Albillos' evidence as true for the purpose of the nonsuit motion, the court assumed that Oscar fell at the juncture of the roadway and the sidewalk, inside the boundary of the demised premises of the master lease.

6

because "the area had been fixed and filled in, so there was no longer a height differential at that location."

Dennis Stahl, vice-president of POC, also testified in the Albillos' case-in-chief. Stahl stated that at the time of the original lease, parcel 21A (the sidewalk strip next to the road) was designated for use as a pedestrian thoroughfare for access to the premises. He also testified during cross-examination by POC's counsel that POC operated as "a middle man" who leased the property from the City and "we in turn, lease our entire estate out to various sub tenants. [Sic.] In the case of Pan Pacific [Village], it would be the Chos. . . ." The Albillos did not introduce any evidence of any sublease from POC during their case-in-chief.

E. *Nonsuit Proceedings*

The Albillos rested on March 4, 2014. POC immediately moved for nonsuit, arguing that the Albillos had failed to present evidence of actual notice of the dangerous condition. The parties argued about the interpretation of the lease documents and the cross-hatching on Exhibit A (the harbor map depicting the leased premises). The court noted that Exhibit A "isn't at all clear," and announced it was going to recess the trial and call Dennis Stahl as the person most knowledgeable about the lease to testify further regarding the extent of the lease and sublease. The court indicated that if the evidence showed the property was "in the hands of the Chos and was, in fact, subleased to the Chos . . . , then I think I have to grant the motion for nonsuit, because I don't think there is evidence of actual knowledge."

The nonsuit hearing resumed the following day. Outside the presence of the jury, Stahl testified that the cross-hatched area on Exhibit A included both parcels 13 and 21A and that POC's intent was to sublease everything it received from the City to the Chos. He also noted that there were structures built as part of the Pan Pacific Village that extended into parcel 21A, including the roof of a decorative entryway that extended all the way to the street.

The trial court granted the nonsuit. First, the court interpreted the lease documents as subleasing all the property leased by POC to the Chos, including the sidewalk in parcel

7

21A. The court concluded that there was no other reasonable reading of the lease documents, the amendments, and Stahl's undisputed testimony regarding the parties' intent. The court then found that the Albillos had presented no evidence from which a jury could find that POC had actual knowledge of a dangerous condition at the time of the accident.

The Albillos appealed the entry of judgment following the nonsuit. In our prior opinion, we affirmed the judgment, concluding that "the trial court correctly held that the Albillos were required to prove POC had actual notice of the dangerous condition." (Prior opinion at p. 25.) In examining the evidence de novo, we determined that "the reasonable interpretation of the sublease as amended was that POC intended to transfer possession of the entire area of Pan Pacific Village, including the entry where Oscar fell, to the Chos," and further that the "Chos were in possession at the time of the fall and had maintained the area since their tenancy began." (*Id.* at pp. 24-25.)

F.    *Doe Amendments and Motion to Strike*

We now turn to the amendments giving rise to the instant appeal. As detailed above, at the close of proceedings on March 4, 2014, the trial court indicated it was inclined to grant POC's nonsuit motion, but continued the hearing to the following day to hear additional testimony and argument. Later that same afternoon, the Albillos filed form amendments to their complaint, substituting Sammyeon,[11] Sam Cho, and Sung Cho as Does 1, 2, and 3, respectively.

On May 29, 2014, the Chos and Sammyeon moved to strike the Doe amendments, supported by a declaration from Bordin-Wosk. They argued that the Albillos had unreasonably delayed in amending their complaint, as plaintiffs had known of the Chos' existence and role as sublessees for several years, including from "initial written discovery," from POC's cross-complaint against the Chos, and from the lease documents, which they claimed had been provided in February 2013. The Chos and Sammyeon further claimed that they had been prejudiced by the delayed amendment, noting that "20

---

[11]Sammyeon is not a party to this appeal. Its relationship to the Chos or to the property is unclear, but is not material to the issues presented here.

8

depositions" had been taken while the Chos were not parties to the action, that experts for the Albillos had inspected the premises on multiple occasions, and that the litigation had progressed through the Albillos' case-in-chief. The Albillos opposed the motion, arguing the Chos and Sammyeon had failed to establish unreasonable delay or prejudice. The Albillos and their counsel maintained that they "consistently believed that [the subleases] evidenced that the area where Mr. Albillo fell and was injured had not been subleased to the Chos."

At the hearing on November 18, 2014, the court noted it would proceed on the motion, captioned as a motion to strike, as a motion to dismiss the Doe defendants. The court stated there was "no question" the delay in amendment was unreasonable, as the Albillos "had plenty of time to bring in these defendants, in fact, knew of the defendants and knew of their relationship to the case. . . . [T]hey certainly had reason to know that these defendants were the sublessor of the property."

The court next questioned Bordin-Wosk, again representing the Chos, to articulate the prejudice suffered. Bordin-Wosk stated that if the Chos had been timely added as defendants, they would have been able to participate in discovery when it was conducted several years prior to trial, including questioning deposition witnesses "as to issues directly affecting the Chos," would have likely moved for summary judgment or taken other steps "back in 2012, 2013 . . . to address their issues." He also pointed out that the "condition of the property has now long changed."

The court then turned to Blumberg, asking him to address the argument that if the Chos had been brought in earlier "they would have been in a better position to strategically place themselves vis a vis Ports O'Call, and by having exhausted litigation [against POC] you get to start new against the new defendant, that puts them at a strategic disadvantage, therefore prejudices them." Blumberg argued that defendants had not demonstrated any prejudice. The court then commented that "by virtue of the delay, the property has changed [and] memories fade," noting that it had "been two years. All property changes over two years." Blumberg responded "Granted. Hard to argue that." He then contended that "the case was competently worked up" and the only issues in

9

dispute were whether there was a dangerous condition at the site of the fall and whether that property was subject to the sublease, which was "a question of contract interpretation."

The court next pointed out that it had "decided" that the sublease to the Chos covered the property at issue and "the Chos didn't get to litigate" that point. To that end, the court asked Blumberg, "isn't that prejudicial to the Chos? What are the chances I'm going to give you two different rulings?" The court continued, "Look, prejudice sometimes is not manifest. There isn't one question that [the Chos attorney, had they had one at the time] might have asked at a deposition that would matter? There's not an inspection that they may have done? There's not an expert they might have hired? . . . . And we've gone through a trial . . . through the plaintiff's case in chief. But still all of that has happened without them, decisions have been made that may very well prejudice their interests. Then there is the almost presumed prejudice . . . memories do fade, property does change." The court again noted that the Albillos were attempting to bring in the Chos "two years after you could have." Blumberg responded that "their analysis of the leases is such" that he and plaintiffs "do[] not believe and continue[] not to believe [the Chos] are probably liable."

Turning to Sammyeon, Blumberg argued there was "no evidence that plaintiffs knew about Sammyeon, Inc. as a party that was probably liable." Bordin-Wosk acknowledged that Sammyeon was not named as a cross-defendant or listed as a sublessor of the property. Neither counsel could respond to the court's further questions regarding what Sammyeon was or its relationship to the Chos or the property.

The court granted the motion as to the Chos and denied it as to Sammyeon, "because nobody knows who they are." With respect to the Chos, the court found that the issue of unreasonable delay was "simple," as "they were a party previously. Plaintiff[s] could have brought them in," and were "certainly put on notice" that "they should have," but "no one did."

The Albillos timely appealed from the entry of judgment.

## DISCUSSION

A.     *Legal Principles*

Section 474 provides in part:  "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint . . . and such defendant may be designated in any pleading or proceeding by name, and when his true name is discovered, the pleading or proceeding must be amended accordingly. . . ."  "The purpose of section 474 is to enable a plaintiff who is ignorant of the identity of the defendant to file his complaint before his claim is barred by the statute of limitations.  There is a strong policy in favor of litigating cases on their merits, and the California courts have been very liberal in permitting the amendment of pleadings to bring in a defendant previously sued by fictitious name.  [Citations.]"  (*Barrows v. American Motors Corp.* (1983) 144 Cal.App.3d 1, 7 (*Barrows*).)  "When the complaint is amended to substitute the true name of the defendant for the fictional name, the defendant is regarded as a party from the commencement of the suit."  (*Munoz v. Purdy* (1979) 91 Cal.App.3d 942, 946.)

Under section 474, the relevant inquiry "is what facts the plaintiff actually knew at the time the original complaint was filed."  (*General Motors Corp. v. Superior Court* (1996) 48 Cal.App.4th 580, 588 (*General Motors*).)  "The lack of knowledge of the true name of the defendant . . . must be 'real and not feigned.'  [Citation.]"  (*Munoz v. Purdy*, *supra*, 91 Cal.App.3d at p. 947.)  Even where a plaintiff was truly ignorant of a defendant's identity at the time of the original complaint, "a defendant named in an action by a Doe amendment under section 474 may challenge the amendment by way of an evidence-based motion," showing first, that plaintiff "unreasonably delayed" in filing the amendment after learning of defendant's identity, and second, that "'defendant suffered prejudice from any such delay.'"  (*A.N. v. County of Los Angeles* (2009) 171 Cal.App.4th 1058, 1066 (*A.N.*), quoting *Barrows, supra*, 144 Cal.App.3d at pp. 7-10.)

We review the factual findings made by the trial court to determine if they are supported by substantial evidence.  (*Fuller v. Tucker* (2000) 84 Cal.App.4th 1163, 1169; *Westfour Corp. v. California First Bank* (1992) 3 Cal.App.4th 1554, 1558.)  Under this

11

standard, we resolve all conflicts in the evidence and draw all reasonable inferences in favor of the prevailing party. (*Le v. Pham* (2010) 180 Cal.App.4th 1201, 1205-1206.)

B. *Unreasonable Delay*

The Albillos contend they did not unreasonably delay in adding the Chos as Doe defendants because they were not aware that the sublease to the Chos included the site of Oscar's accident until Stahl's testimony during their case-in-chief. The trial court disagreed, and we conclude that substantial evidence supports that finding.

The phrase "ignorant of the name of a defendant" in section 474 is broadly interpreted to mean not only ignorance of the defendant's identity, but also ignorance of the facts giving rise to a cause of action against that defendant. "[E]ven though the plaintiff knows of the existence of the defendant sued by a fictitious name, and even though the plaintiff knows the defendant's actual identity (that is, his name) the plaintiff is 'ignorant' within the meaning of the statute if [plaintiff] lacks knowledge of that person's connection with the case or with [plaintiff's] injuries. [Citations.]" (*General Motors, supra*, 48 Cal.App.4th at pp. 593–594, fn. omitted; see also *Marasco v. Wadsworth* (1978) 21 Cal.3d 82, 88 ["'The plaintiff is deemed "ignorant of the name" if he knew the identity of the person but was ignorant of the facts giving him a cause of action against the person [citations].' [Citation.]" (*Wadsworth* at p. 88.) "The pivotal question in this regard is 'did plaintiff know facts?' not 'did plaintiff know or believe that she had a cause of action based on those facts?' [Citation.]" (See also *Scherer v. Mark* (1976) 64 Cal.App.3d 834, 841 [no amendment where plaintiff "knew all of the basic facts constituting her alleged cause of action when she first filed her original complaint"].)[12]

---

[12]At oral argument, counsel for the Albillos suggested a heightened standard should apply to determine when a plaintiff must seek a Doe amendment, citing language from *Dieckmann v. Superior Court* (1985) 175 Cal.App.3d 345, 363 that amendment is not necessary until the plaintiff "has knowledge of sufficient facts to cause a reasonable person to believe liability is probable." The Albillos failed to raise this point until oral argument and we therefore deem it forfeited. (See *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356, fn. 6 ["An appellate court is not required to consider any point made for the

The record before us does not establish that the Albillos knew of the Chos' identity when the Albillos filed their original complaint. Thus, our analysis turns on when the Albillos gained the knowledge to trigger their duty to timely amend under section 474. The parties agree that the relevant fact giving rise to a cause of action is that the Chos subleased the portion of the POC's property on which the accident purportedly occurred—the sidewalk of parcel 21A. We conclude there is substantial evidence in the record that the Albillos were aware of the Chos' identity and connection to their claims as possible sublessors of the site of the accident at the time of the cross-complaint in July 2012.

Specifically, it is clear from the Albillos' March 2012 complaint that they were aware that a sublease might potentially cover the property at issue, as they included allegations against the Doe defendants as "sub-lessees, tenants, and others in possession of, controlling, or having an interest in the property" and alleged that POC was "the master lessee, landlord and operator" of the property. Then, in July 2012, POC filed its cross-complaint against the Chos, specifically seeking indemnification under the sublease to the Chos and alleging that any damages suffered by the Albillos were the result of "actions or inaction" by the Chos. At that point, the Albillos knew of the Chos' identity and connection to their claims as alleged sublessees of the portion of the property where Oscar fell. Those facts provided the *same* basis for a negligence claim against the Chos as the claim the Albillos alleged against POC in their original complaint. Because the Albillos possessed the facts giving rise to a cause of action against the Chos, their duty to amend under section 474 was triggered.

first time at oral argument"]; *Bonfigli v. Strachan* (2011) 192 Cal.App.4th 1302, 1311, fn. 4 ["[C]ontentions raised on appeal for the first time at oral argument are generally waived."].) In addition, we disagree that *Dieckmann* (and subsequent cases citing the same language) establishes a different standard. (See *McClatchy v. Coblentz, Patch, Duffy & Bass, LLP* (2016) 247 Cal.App.4th 368, 377-379 (Jones, P.J., concurring).) Nor are we persuaded that the Albillos would prevail even under the heightened standard they belatedly assert.

Even assuming the Albillos did not possess sufficient knowledge to require amendment based on the cross-complaint, they certainly gained such knowledge well before trial began in 2014. For example, in mid-2013, the Chos filed a joinder to POC's summary judgment motion, acknowledging that they were sublessees of POC but arguing that Oscar fell on property not covered by either the Master Lease or any sublease. Further, while the parties disagree as to when exactly the Albillos received copies of the lease documents at issue, there is no dispute that they had them prior to trial. Thus, prior to trial, the Albillos specifically knew that the language of the sublease to the Chos included all common areas and knew that POC contended that the Chos were liable as sublessees of the site of the injury. They did not seek to amend their complaint to add the Chos based on this information; instead, they elected to proceed to trial solely against POC and filed a motion in limine to exclude all evidence of any sublease from trial. Their subsequent attempt to add the Chos as defendants after the court tentatively granted POC's nonsuit was properly barred as untimely.

In fact, the Albillos do not deny that they knew prior to trial that the Chos were sublessors, or that they had the lease documents. Instead, they claim their interpretation of the leases led them to believe the Chos' sublease did not cover the sidewalk and they did not discover otherwise until Stahl testified at trial. But their subjective belief regarding whether they had a claim is not the measure of compliance with section 474; rather, their knowledge of the facts at issue controls. (See *General Motors, supra*, 48 Cal.App.4th at pp. 593–594; *Hazel v. Hewlett* (1988) 201 Cal.App.3d 1458, 1464-1465.)

We reached a similar conclusion in *Miller v. Thomas* (1981) 121 Cal.App.3d 440. In *Miller*, the plaintiff in a personal injury action arising from a car accident knew the identity of the other driver, but made a tactical decision to sue only that driver's employer. (*Id*. at p.442.) The plaintiff later amended the complaint to add the driver as a Doe defendant. (*Id*. at p.443.) The trial court found plaintiff's amendment was untimely pursuant to section 474 and we affirmed, noting the plaintiff knew the driver's identity and knew from the employer's answer that the it disputed that the driver had been acting in the course and scope of his employment. (*Id*. at p. 445.) As such, the declaration by

14

plaintiff's attorney emphasizing "his belief that the [employer] could be held liable is no more than an affirmation of his tactical choice," not a basis to delay amendment. (*Ibid.*) Similarly, here, the Albillos' belief regarding the legal interpretation of the sublease did not insulate them from their failure to timely add the Chos as defendants once they knew of the Chos' involvement as sublessees of the property.[13]

In short, substantial evidence supports the trial court's conclusion that the Albillos knew of the Chos and their relationship to their claims as sublessees, and therefore "were certainly put on notice" of facts giving rise to a claim against the Chos as early as 2012, when the Chos were added as cross-defendants. Having reached that conclusion, the trial court could reasonably find that the Albillos unreasonably delayed in amending to add the Chos as defendants only after the conclusion of their case-in-chief, and only after it was clear the trial court intended to grant POC's nonsuit.

C.     *Prejudice*

The Albillos also argue that the Chos failed to make a sufficient showing that they would be prejudiced by the belated amendment. We disagree, and conclude the record contains substantial evidence in support of the trial court's finding of prejudice.

A defendant's challenge to an amendment under section 474 must establish that "he or she would suffer prejudice from plaintiff's delay in filing the Doe amendment." (*A.N., supra*, 171 Cal.App.4th at p. 1067.) Further, "'a defendant cannot rely simply on the general policy of the applicable statute of limitations,'" but must instead make a showing of "'specific prejudice.' [Citation.]" (*Id.* at p.1066.)

---

[13]Stahl's testimony on the intended scope of the sublease, given the day *after* the Albillos filed their Doe amendments, added nothing to the theory of liability on which the Albillos' claim against the Chos as sublessors was premised. (See, e.g., *McClatchy, supra,* 247 Cal.App.4th at p. 374 [Doe amendment may not be "based on a later-drawn legal conclusion arising from the discovery of an additional fact when that fact does not add anything to the theory of liability apparent at the time of the original pleading"]; *Dover v. Sadowinski* (1983) 147 Cal.App.3d 113, 117-118 [amendment improper where plaintiff's counsel admitted knowing defendant was involved but claimed they had "no idea . . . how deeply . . . he was involved"].) Notably, the Albillos continued to assert their interpretation of the sublease as excluding the sidewalk even after Stahl's testimony.

In *A.N.*, for example, the trial court refused to allow the plaintiff to amend his complaint with the true names of several Doe defendants less than one month before trial, stating it was "'very concerned'" about the Doe Defendants being "'brought into this spinning vortex shortly before trial.'" (*A.N., supra*, 171 Cal.App.4th at p. 1068.) Division Eight of this district agreed, affirming the trial court's implied finding of prejudice on the basis that "it does not require speculation to recognize that a party who is drawn into litigation on the eve of trial will face difficulties in preparing a defense in such short order." (*Ibid.*)

Here, the potential for prejudice to the Doe defendants is even greater. The Chos and the trial court articulated several types of prejudice flowing from the Albillos' mid-trial Doe amendments; we will examine each in turn. First, the Chos contend that there were 20 depositions taken after the Chos were dismissed from the cross-complaint. This contention lacks supporting evidence in the record. The only evidence regarding depositions is the paragraph in Bordin-Wosk's declaration discussing a single deposition of a City employee taken in July 2013. Thus, the Chos have offered evidence of only one deposition, rather than 20, at which they were not present or represented, in support of their argument that they could have asked questions pertinent to their liability.[14]

Second, the Chos argued they would be prejudiced because of their inability to inspect the area of the accident (or retain experts to do so) until many years after its occurrence, and several years after the Albillos' experts had the opportunity to do so. The trial court presumed that the property had changed with the passage of several years. In fact, such a presumption was unnecessary, as the Albillos' expert testified at trial that

---

[14]We reject the Albillos' suggestion that the Chos suffered no prejudice from any of the litigation proceedings conducted in their absence because Bordin-Wosk represented POC during the proceedings and then later represented the Chos. Clearly, POC and the Chos likely had some interests in alignment with each other but others that were in direct conflict, most notably the issue of which party possessed the property and therefore potentially owed a higher duty of care to the Albillos.

the site of the accident had since been repaired.[15]  The fact that the belated amendment deprived the Chos of notice of the need to inspect the site of the alleged dangerous condition (other than their time as cross-defendants at the very beginning of the case) until more than four years after the accident, and after the condition had been repaired, is likely sufficient to establish prejudice standing alone.

Third, as the trial court pointed out, it issued rulings adverse to the Chos' interests without their ability to participate.  Crucially, the court relied on uncontradicted testimony offered by POC as to the intent and custom of the parties to the sublease and concluded that the Chos were the tenants in possession of parcel 21A.  We affirmed that conclusion in our prior opinion.  Further, the court's finding that the Chos leased the area where the accident occurred would allow the Albillos to use the lower standard of constructive notice, rather than actual notice, of the dangerous condition in pursuing liability against the Chos.  Even assuming the Chos could successfully argue against the application of the law of the case doctrine[16] (a proposition neither party addresses on appeal), they nevertheless would be prejudiced because they were unable to offer any evidence or argument as part of the initial determination of the scope of the sublease.

Accordingly, the Chos adequately demonstrated that they would suffer prejudice if they were added as defendants four years after the injury occurred and after the site had been repaired and burdened with a trial court ruling directly adverse to their interests.  Substantial evidence supports the trial court's dismissal of the Doe amendments.

---

[15]While the Chos did not cite this testimony in their moving papers, their notice of motion indicated reliance on all files in the action; thus, the evidence was properly before the court.  (See *Larsen v. Johannes* (1970) 7 Cal.App.3d 491, 496.)

[16](See, e.g., *People v. Murtishaw* (2011) 51 Cal.4th 574, 589 ["""[W]here, upon an appeal, the [reviewing] court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress. . . . "' [Citation.]"].)

**DISPOSITION**

The judgment is affirmed.  The Chos are awarded their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


EPSTEIN, P. J.


WILLHITE, J.